(925 P.2d 449)
No. 76,098

In The Matter of the Estate of Jack V. Foley, Deceased.

Opinion filed October 25, 1996.

Kevin F. Mitchelson, Cole W. Hawks, and John H. Mitchelson, of Wheeler & Mitchelson, Chartered, of Pittsburg, for appellant.

Richard A. Medley, of Medley & Allen, of Coffeyville, for appellee.

Before KNUDSON, P.J., MARQUARDT, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

KNUDSON, J.: This is an interlocutory appeal by Rebecca Foley from the order of the district court denying her petition to dismiss the claim of Greta Holsinger filed in the estate proceedings of Jack V. Foley, deceased. Greta contends that Foley is her biological father. Rebecca contends that Greta's claim is time barred. The district court disagreed and dismissed Rebecca's petition.

We reverse, concluding Greta's claim is time barred and must be dismissed.

### Factual Circumstances

Foley died intestate on September 12, 1995. Greta filed a proof of claim, alleging that Foley was her biological father. Greta stated that her biological mother, Betty Wilkinson, had been married at the time when she became pregnant by Foley. Greta filed a motion that requested DNA testing on blood samples in order to prove that she is Foley's biological daughter. The motion stated that (1)

Foley had died in an automobile accident in Missouri; (2) the coroner in Missouri had withdrawn blood samples from Foley and those samples were being held in Missouri; and (3) during a paternity action in 1993, a DNA test had been administered to Foley which established that he was the biological father of Rebecca Good (now Rebecca Foley) and those test results were available.

### Analysis

Greta claims that she is Foley's daughter. For intestate succession purposes, a child includes someone "whose parentage is or has been determined under the Kansas parentage act." K.S.A. 59-501(a).

The Kansas Parentage Act (KPA) is codified in K.S.A. 38-1110 *et seq.* Two provisions of the KPA directly bear on the issue before this court.

K.S.A. 1995 Supp. 38-1114 consists of various circumstances under which there is a presumption of paternity. For purposes of this appeal, the statute states in material part:

"(a) A man is presumed to be the father of a child if:
  "(1) The man and the child's mother are . . . married to each other . . . .
  . . . .
  "(5) Genetic test results indicate a probability of 97% or greater that the man is the father of the child.
  . . . .
"(c) If two or more presumptions under this section arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic, including the best interests of the child, shall control."

K.S.A. 1995 Supp. 38-1115 states:

"(a) A child or any person on behalf of such a child, may bring an action:
  "(1) At any time to determine the existence of a father and child relationship presumed under K.S.A. 38-1114 and amendments thereto; or
  "(2) at any time until three years after the child reaches the age of majority to determine the existence of a father and child relationship which is not presumed under K.S.A. 38-1114 and amendments thereto."

In her written claim filed with the court, Greta asserted that she was Foley's daughter and "a comparison of her DNA with Jack V. Foley's DNA will conclusively show that Jack V. Foley is her biological father."

In the hearing to dismiss Greta's proof of claim, the district court determined K.S.A. 38-1114(a)(1) to be applicable rather than K.S.A. 38-1114(a)(2) and ordered release of Foley's blood samples and DNA tests for genetic testing to "try [and] establish a presumption of paternity under K.S.A. 38-1114(a)(5)." (The blood samples and DNA tests referred to by the district court were taken in a paternity action prior to Foley's death and by a medical coroner after his death.)

Because the issue on appeal requires us to construe the KPA, our scope of review is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). We also observe that "[w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992).

The KPA has previously been construed in *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989). The Supreme Court stated:

"In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible."

The KPA became law in 1985 (L. 1985, ch. 114), and there were no amendments to either K.S.A. 38-1114 or K.S.A. 38-1115 until 1994 (L. 1994, ch. 292, §§ 5, 6).

In 1994, K.S.A. 38-1114(a) was amended to provide a presumption of paternity if "genetic test results indicate a probability of 97% or greater that the man is the father of the child." L. 1994, ch. 292, § 5. It is apparent from a review of legislative history that the amendment was believed necessary to bring the KPA into compliance with Congress' Omnibus Budget Reconciliation Act of 1993 (OBRA). OBRA required all states to develop a hospital-based paternity acknowledgment program, as well as provide for a presumption of paternity, if genetic test results exceeded a specific threshold of probability. See 42 U.S.C. § 652(g) (1994).

K.S.A. 38-1115(a) was not amended as a result of OBRA, and the minutes of the Senate Judiciary Committee do not indicate any discussion whatsoever of this section of the statute. Consequently, a review of legislative history is not affirmatively helpful in resolving the issue on appeal.

However, by reading the subsections of K.S.A. 1995 Supp. 38-1114(a) *in pari materia*, legislative intent is ascertained. Before the 1994 amendment of K.S.A. 38-1114, each set of circumstances giving rise to a presumption of paternity rested solidly on facts in being before the paternity action was commenced. For example, the putative father was married to the child's mother, or he had a duty to support the child under an order of support, or he executed a voluntary acknowledgment of paternity.

We believe that the genetic test results amendment in K.S.A. 1995 Supp. 38-1114 must be construed in a manner consistent with the other circumstances giving rise to a presumption of paternity; that is, genetic test results giving rise to a presumption of paternity must be known before an action is commenced under the KPA. A contrary construction would render the 3-year statute of limitations in K.S.A. 1995 Supp. 38-1115(a)(2) meaningless until genetic testing has been completed under K.S.A. 1995 Supp. 38-1118. We should not conclude that the legislature intended to make a nullity of an existing law by implication.

In summary, we hold the district court erred in its construction of K.S.A. 1995 Supp. 38-1114(a)(5) and application of K.S.A. 1995 Supp. 38-1115(a)(1). The genetic test results must be known before a presumption of paternity arises; if no genetic test results to establish paternity have been completed before the parentage action is commenced, K.S.A. 38-1115(a)(2) is applicable. When Greta filed her lawsuit, the only presumption was that J.D. Wilkinson, who was married to Greta's mother and the man who reared her, was her father. Thus, K.S.A. 38-1115(a)(2) is applicable and bars her claim against Foley's estate.

Reversed.