Nos. 83,293, 83,411, 83,605

LARRY W. HALLEY, *Appellant,* v. KEVIN BARNABE, BILL E. CREACH, SHARLA CREACH and INFOTECH, INC., *Appellees.* INFOTECH OF KANSAS CITY, LLC, and LARRY W. HALLEY, *Appellants,* v. INFOTECH, INC., BILL CREACH, BILL E. CREACH, SHARLA CREACH, and KEVIN BARNABE, *Appellees.* INFOTECH OF KANSAS CITY, LLC, and BILL CREACH, *Appellants,* v. LARRY HALLEY and SEARCH ONE, INC., *Appellees.*

(24 P.3d 140)

Opinion filed June 8, 2001.

*Phillip C. Rouse,* of Douthit Frets Rouse & Gentile, L.L.C., of Kansas City, Missouri, argued the cause, and *Jennifer L. Benedict,* of the same firm, was with him on the briefs for appellants Larry W. Halley and Infotech of Kansas City, LLC, and for appellees Larry W. Halley and Search One, Inc. *Kevin J. Odrowski* and *Shelley I. Ericsson,* of the same firm, were with him on the briefs for appellants Larry W. Halley, and Infotech of Kansas City, LLC.

*Nathan C. Harbur,* of Nathan C. Harbur, Chartered, of Leawood, argued the cause and was on the briefs for appellants Infotech of Kansas City, LLC, and Bill Creach and for appellee Bill Creach.

*J. Nick Badgerow,* of Spencer Fane Britt & Browne LLP, of Overland Park, argued the cause, and *Jennie M. DeVeney,* of the same firm, was with him on the briefs for appellees Bill E. Creach, Sharla Creach, and Infotech, Inc.

LARSON, J.: This consolidated appeal of three separate actions between two members of a limited liability company raises a myriad of claims and issues which were disposed of below in two cases by granting motions to dismiss and, in the third, by the denial of a motion for summary judgment that is before us in an interlocutory appeal.

Because of the enactment of the Kansas Revised Limited Liability Company Act (KRLLCA), K.S.A. 2000 Supp. 17-7662 *et seq.,*

which we deem to be retroactive and procedural in nature, we reverse the granting of the motions to dismiss, affirm the denial of summary judgment, and remand all three cases for further proceedings.

Explanation of the claims of each case and the argument thereunder is not so easily or simply stated.

*Factual and procedural background*

Bill Creach and Larry Halley jointly formed Infotech of Kansas City, LLC (LLC) in 1995, as member-managers and 50% owners. The members executed an operating agreement governing the LLC, which recognized the right of the managers to engage in other business activities so long as they did not compete with the business of the LLC.

At the time the LLC was formed, Bill Creach and his wife, Sharla Creach, co-owned Infotech, Inc. Sometime after forming the LLC, Bill Creach transferred all his interest in Infotech, Inc., to the corporation, making his wife the sole owner; his son, Bill E. (Gene) Creach, became its president.

One of the defendants in one of the cases, Kevin Barnabe, was originally an employee of the LLC and later Infotech, Inc. Due to his bankruptcy filing and pursuant to an order of the bankruptcy court, which is an issue in this appeal, Barnabe has been dismissed as a party.

There is an additional corporation involved, Search One, Inc., which is owned by Halley.

The LLC provided independent contractor programmers to numerous metropolitan Kansas City businesses from 1995 until 1997, when controversy arose between Bill Creach and Halley and the litigation in issue here began.

In the first lawsuit (district court case No. 98CV237), Bill Creach sued Halley and Search One, Inc., on behalf of himself and the LLC. Bill Creach and the LLC alleged that Halley had breached his fiduciary duties to the LLC, competed with the LLC, and did not perform his agreed responsibilities. Bill Creach prayed for dissolution on behalf of himself and the LLC (as well as a determination that Halley had forfeited his interest in the LLC), damages

for breach of the operating agreement, damages for breach of fiduciary duties, and an injunction requiring the defendants to refrain from further harmful acts to the LLC. It was also requested that a receiver be appointed to help dissolve the deadlocked LLC. On behalf of the LLC only, Bill Creach prayed for damages for tortious interference with a business relationship.

Halley counterclaimed for damages arising from the alleged collusive and competitive conduct of Bill, Gene, and Sharla Creach, as well as Barnabe and Infotech, Inc. Halley requested damages for breach of contract and various torts, and he also requested an accounting and an injunction precluding the named parties from competing with the LLC.

Bill Creach, on behalf of himself and the LLC, moved for summary judgment, claiming that Halley's counterclaims must be dismissed because it was not brought on behalf of or against the LLC. Judge James Franklin Davis denied the plaintiffs' motion. In upholding Halley's rights, the court held that there were genuine issues of material facts precluding summary judgment on any of Halley's counterclaims and that, as a matter of law, Halley could bring his counterclaims directly even though it involved derivative claims, by applying to limited liability companies the closed corporation derivative exception created in *Richards v. Bryan*, 19 Kan. App. 2d 950, 879 P.2d 638 (1994).

In the second case (district court case No. 98CV1290), Halley individually sued Sharla Creach, Gene Creach, Kevin Barnabe, and Infotech, Inc. He alleged various torts and breach of contract. The defendants filed a motion to dismiss claiming that Halley lacked standing to file the suit individually. Judge Gerald T. Elliott granted the defendants' motion to dismiss.

Halley filed a third suit (district court case No. 98CV4900) on behalf of himself and the LLC against Bill Creach, Gene Creach, Sharla Creach, Kevin Barnabe, and Infotech, Inc. Halley and the LLC alleged various torts, breach of fiduciary duty, and breach of contract. The plaintiffs also requested an injunction to stop the defendants from committing further harmful acts to the LLC. The defendants filed a motion to dismiss. Judge Janice D. Russell found that the LLC lacked authority to file suit without the consent of

Bill Creach and that Halley's claim should be dismissed because a derivative suit is not available to one of two 50% owners of a limited liability company.

*The three appeals*

After the summary judgment motion to Halley's counterclaims was denied, Bill Creach and the LLC obtained the right to take an interlocutory appeal pursuant to K.S.A. 60-2102. On appeal, they contend that Halley lacked standing to file a direct individual claim or that he could not bring a derivative claim on behalf of the LLC. Bill Creach is represented by separate counsel from the remaining defendants (Infotech, Inc., Sharla Creach, and Gene Creach).

Halley and the LLC appeal the trial court's granting of motions to dismiss in both the other actions.

Halley and the LLC filed a consolidated brief as to cases Nos. 98CV1290 and 98CV4900 in which they contend the trial court erred (1) in deciding he lacked standing to bring a direct suit for damages, (2) in dismissing the LLC's claims and deciding the LLC could not file the claims without the approval of Bill Creach, and (3) in dismissing his claims and deciding he could not maintain a derivative action against the defendants.

The other defendants (Infotech, Inc., Sharla Creach, and Gene Creach) did not file a cross-appeal but contend res judicata should bar Halley from proceeding in case No. 98CV4900 in the name of the LLC and that count III in case No. 98CV1290 and count V in case No. 98CV4900 are legally deficient.

After Halley's brief was filed, he advised the court, pursuant to Supreme Court Rule 6.09(b) (2000 Kan. Ct. R. Annot. 41), as to amendments in the statutory provisions relating to limited liability companies in Kansas and contends that under the provisions of the KRLLCA, derivative suits by members are authorized. The other parties did not file responses to Halley's Rule 6.09 filing.

*Standards of Review*

We are required to review rulings on motions to dismiss, the denial of summary judgment, and statutory amendments. We first set forth our standard of review which drives the results we reach.

The granting of motions to dismiss has not been favored by our courts. The manner in which they should be reviewed was set forth in *Ripley v. Tolbert*, 260 Kan. 491, 493, 921 P.2d 1210 (1996), where we quoted *Bruggeman v. Schimke*, 239 Kan. 245, 247-48, 718 P.2d 635 (1986), as follows:

" ' "Our scope of review, where the trial court has sustained a motion to dismiss, is concisely defined in *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 620 P.2d 837 (1980):

" ' "When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer." Syl. ¶ 1.

" ' "Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim." Syl. ¶ 2.

" ' "In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself." Syl. ¶ 3.' "

*Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 231-32, 805 P.2d 1244, *rev. denied* 248 Kan. 996 (1991), further explains our hesitancy to grant a motion to dismiss for failure to state a claim:

"In essence, we are required to assume that the facts alleged by the plaintiffs are true, and we are required to make any reasonable inferences to be drawn from those facts. In addition, it is our duty to determine whether those pleaded facts and inferences state a claim, not only on the theory which may be espoused by the plaintiffs, but on *any possible theory* we can divine.

"There are sound reasons for exercising judicial skepticism towards dismissal of a petition for failure to state a claim prior to the completion of discovery. We long ago abandoned the theory of fact pleading in favor of our present 'notice' type pleading.

. . . .

"Indeed, under our modern procedure, the petition does not intend and is not necessarily intended to govern the entire course of the lawsuit. The ultimate de-

termination as to the legal issues and theories on which the action will be determined is the pretrial order."

The denial of the summary judgment motion is considered only because of its interaction with the companion cases but its standard of review is well known:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-71, 974 P.2d 531 (1999).

"Ordinarily summary judgment should not be granted when discovery is incomplete. [Citation omitted.]" *Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson*, 250 Kan. 490, 498, 827 P.2d 758 (1992). However, if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even when discovery is unfinished. See *Parker v. Farmway Credit Union*, 11 Kan. App. 2d 223, 226-27, 718 P.2d 643, *rev. denied* 239 Kan. 694 (1986).

Additionally, the question of the applicability of the KRLLCA raises questions of law of the interpretations of statutes over which our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). This brings into play the question of whether the new Act is to be given retrospective application. On the question of the retrospective application of a statute, we have said:

" 'The general rule of statutory construction is that a statute will operate prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively. This rule is normally applied when an amendment to an existing statute or a new statute is enacted which creates a new liability not existing before under the law or which changes the substantive rights of the parties.'

" 'The general rule of statutory construction is modified where the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties.'

" 'While generally statutes will not be construed to give them retrospective application unless it appears that such was the legislative intent, nevertheless when a change of law merely affects the remedy or law of procedure, all rights of action will be enforced under the new procedure without regard to whether or not the suit has been instituted, unless there is a savings clause as to existing litigation.' " *Davis v. Hughes,* 229 Kan. 91, 101, 622 P.2d 641 (1981) (quoting *Nitchals v. Williams,* 225 Kan. 285, Syl. ¶ 1-3, 590 P.2d 582 [1991]).

See *Ripley v. Tolbert,* 260 Kan. at 503.

We have further held that "[i]t is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. . . .The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted." *In re Marriage of Killman,* 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

*Does Halley have standing to file on behalf of the LLC an action for damages against either the other member-manager or third parties for damages?*

*Decisions of the trial courts*

The basic opinion of the trial court which granted the motion to dismiss is that of Judge Russell in case No. 98CV4900 where she held:

"[T]his Court holds that a member of an LLC may not bring a derivative action on behalf of the LLC against the only other member, nor may he bring a derivative action against persons, in this case, Gene and Sharla Creach, Barnabe, and the Corporation whom he suspects may be holding assets that he believes properly belong to the LLC, when the gravamen of his complaint is the alleged wrongdoer of the only other member of the LLC."

The motion to dismiss in case No. 98CV1290 raised similar arguments. Although this claim was on behalf of Halley individually, Judge Elliott treated the issues as being the same as in case No. 98CV4900 when he said:

"And I must tell you both that I don't think there is a significant difference between this case and Judge Russell's case. . . .

. . . .

"But whether you call it comity or whether you call it res judicata or whether you call it collateral estoppel, or whether you call it common sense, I think once Judge Russell has ruled, I think, I really think I am bound to adopt that ruling and that result. . . .

. . . .

". . . I am going to adopt her ruling."

The judge allowed comments by Halley's counsel in which it was pointed out this case involved the claimed damages of Halley individually. At this point the court stated:

"THE COURT: But—forgive me—but his own damages aren't one iota different than one half of the damages to the LLC, are they?

"MR. MORROW [counsel for Halley]: I would basically agree with that, Judge. Except, that trespass to chattels claim that was specific to him. But, then, again, it hurt both he and the LLC."

The court then directed counsel for Gene Creach, Sharla Creach, and Infotech, Inc., to prepare a journal entry which dismissed the case with prejudice at plaintiffs' cost.

The motion for summary judgment on Halley's individual and derivative counterclaims in the first action, case No. 98CV237, was denied by Judge Davis in an opinion rendered subsequent to but not relying on Judge Russell's ruling. The two rulings reach different results, and while both are well reasoned, with the legislature clearly providing a procedure in the 1999 amendments for derivative actions to apply to limited liability companies, the question of whether to apply the logic and holding of *Richards v. Bryan* becomes unnecessary if we hold the KRLLCA applies.

Judge Davis concluded:

"[F]irst, that there are genuine issues of material fact precluding summary judgment on any of the defendant's counterclaims, and second, that as a matter of law defendant Halley may proceed with his counterclaims as direct claims against plaintiffs. However, since claims III through VII are derivative in nature, any recovery on them shall accrue to the LLC, by way of the receiver appointed to handle its affairs."

With this conclusion, the motion for summary judgment was denied.

*Statutory provisions relating to limited liability companies*

We look first to the statutory provisions which relate to limited liability companies in Kansas.

Limited liability companies became creatures of the Kansas statutes commencing with the enactment of the Kansas Limited Liability Company Act (KLLCA), K.S.A. 17-7601 *et seq.*, in 1990. See L. 1990, ch. 80, §1. Amendments were made and additional provisions were added in subsequent years through 1998. None of the sections appear to relate to derivative suits.

However, all of the existing statutes were repealed, and a revised statute was enacted and placed in effect January 1, 2000, by the 1999 Kansas Legislature. L. 1999, ch. 119, § § 1-81. The provisions are now found in K.S.A. 2000 Supp. 17-7662 through K.S.A. 2000 Supp. 76,142. K.S.A. 2000 Supp. 17-7662 states that the act shall be known and cited as the Kansas Revised Limited Liability Company Act. Because there are sections of the KRLLCA that relate to derivative actions, we first consider if the revised act is applicable to our case.

*Retroactivity of the KRLLCA*

The wording of K.S.A. 2000 Supp. 17-76,140 relates to the effective date of the KRLLCA and expressly states: "From and after January 1, 2000, this act shall be applicable to *all* limited liability companies formed in Kansas, *whether formed before or after such date*." (Emphasis added.) This wording expresses the clear intent to make all of its provisions apply to limited liability companies such as Infotech of Kansas City, LLC.

The legislative history also appears to show the same intent. When presented to the legislature, the revised act's passage was supported by the Kansas Bar Association (KBA) as adopting portions of the Delaware code. In the KBA analysis given to the House Judiciary Committee considering House Bill 2276, the comments to Sec. 79, which is now K.S.A. 2000 Supp 17-76,140, stated the effective date provision was not like Section 68 of the Kansas Revised Uniform Partnership Act (KRUPA), K.S.A. 2000 Supp. 56a-1001 *et seq.*, which had been enacted in 1998. The comment stated:

"This section provides for a future effective date. The above text is recommended so that the Act will provide a transition period to become familiar with the act. It does not follow the effective date provision adopted in Section 68 of the Kansas Revised Uniform Partnership Act enacted in 1998 which provides an additional transition period for existing partnerships." Minutes of the House Judiciary Committee, February 16, 1999, Attachment 5.

When one compares the very limited effective provisions of Section 68 of the KRUPA (K.S.A. 2000 Supp. 56a-1304) with the broader language of Section 79 (K.S.A. 2000 Supp. 17-76,140) of the KRLLCA, it is apparent that the new act was to apply on its effective date and govern all limited liability companies then in existence. This clearly includes Infotech of Kansas City, LLC, and the pending cases involving its operation.

More importantly, there is no savings clause included in the KRLLCA while one was specifically included in the KRUPA. K.S.A. 2000 Supp. 56a-1305 states: "This act does not affect an action or proceeding commenced or right accrued before this act takes effect." Had the legislature intended the same result to obtain under the KRLLCA, it is clear that it knew how to do so.

As has been said in 73 Am. Jur. 2d, Statutes § 354, p. 490: "In the absence of any saving clause, a new law changing a rule of practice is generally regarded as applicable to all cases then pending." We hold that the KRLLCA by its express language, legislative intent, and the absence of a savings clause is retroactive in effect and must be applied to the three cases being considered.

*Derivative suits specifically authorized by KRLLCA*

We next look to the specific language of the KRLLCA, which is directly applicable to this appeal.

"A member may bring an action in the district court in the right of a limited liability company to recover a judgment in its favor if managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed." K.S.A. 2000 Supp. 17-76,130.

"In a derivative action, the plaintiff must be a member at the time of bringing the action and:

"(a) At the time of the transaction of which the member complains; or

"(b) the member's status as a member had devolved upon the member by operation of law or pursuant to the terms of an operating agreement from a person who was a member at the time of the transaction." K.S.A. 2000 Supp. 17-76,131.

"In a derivative action, the petition shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a manager or member or the reasons for not making the effort. K.S.A. 2000 Supp. 17-76,132.

"If a derivative action is successful, in whole or in part, as a result of a judgment, compromise or settlement of any such action, the district court may award the plaintiff reasonable expenses, including reasonable attorney fees, from any recovery in any such action or from a limited liability company." K.S.A. 2000 Supp. 17-76,133.

The KBA comments to § 69 (K.S.A. 2000 Supp. 17-76,130) state: "This is a new provision and is similar to principles that apply to corporations." Minutes of the House Judiciary Committee, February 16, 1999, Attachment 5. Clearly, derivative suits have now been expressly authorized by the legislature and directed to apply to limited liability companies. We would reach the same result if we held the logic and ruling of *Richards v. Bryant* applied to limited liability companies, but, unless these new statutes are deemed to be substantive only, the statutory remedy must be recognized and applied to the facts of our three cases.

*Substantive v. procedural*

Substantive law has been defined as "the part of the law that creates, defines and regulates the rights, duties, and powers of the parties." Black's Law Dictionary 1443 (7th ed. 1999). The same authority defines procedural law as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." Black's Law Dictionary 1221 (7th ed. 1999).

In *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. 184, 191, 883 P.2d 1177 (1994), we decided whether an amendment to the Workers Compensation Act was procedural or substantive. We held that a new amendment should be given retroactive effect because it was the express intent of the legislature and further stated:

"The general rule is that if an amendment is to a procedural statute and it does not prejudicially affect the substantive rights of the parties, all actions will be subject to the new procedure whether they accrued before or after the change in

the law and whether or not a suit had been instituted. See *Lakeview Village v. Board of Johnson County Comm'rs*, 232 Kan. 711, 720, 659 P.2d 187 (1983). Procedural laws are those that concern 'the manner and order of conducting suits—in other words, the mode of proceeding to enforce legal rights.' *Stevenson v. Topeka City Council*, 245 Kan. 425, 427, 781 P.2d 689 (1989). Substantive laws establish the 'rights and duties of parties.' Black's Law Dictionary 1429 (6th ed. 1990)." 256 Kan. at 191.

Although not precisely on point we have discussed the substantive versus procedural issue in several other recent cases. In *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, Syl. ¶ 4, 831 P.2d 958 (1992), the defendant complained that the removal of the bar of statutory limitations defense was a violation of its substantive and vested rights. We held there was no vested right in a limitations defense, but the converse would be true if a statute of repose was in issue.

In *KPERS v. Reimer & Koger Assocs., Inc.*, 261 Kan. 17, 22-23, 927 P.2d 466 (1996), we dealt with a statute that contained specific legislative intent to be applied retroactively. In an attempt to enhance settlements of KPERS litigation, the statute in issue provided that once judicial approval of the settlement existed, the settling party was then discharged from all liability for contribution or noncontractual indemnity as to any other individual or entity. In upholding the constitutionality of the statute on both due process and separation of powers grounds, this court noted:

" '[A] mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right.' 228 Kan. at 473-74, 618 P.2d 778; see *Resolution Trust Corp. v. Fleischer*, 257 Kan. 360, 365-68, 892 P.2d 497 (1995).

. . . .

"Rights are vested when the right to enjoyment, present or prospective, has become the property of a particular person as a present interest. *Board of Greenwood County Comm'rs v. Nadel*, 228 Kan. at 473, [618 P.2d 778 (1980)]." 261 Kan. at 43.

Recognizing insulation from derivative suits as a substantive and vested right would have the effect of recognizing that the violations contained in Halley and the LLC's petition did exist (which we are required to assume in considering the motions to dismiss) but would also have the effect of upholding the two decisions below

that no remedy exists. Neither a member nor a third party can claim a right to be protected from suit for its claimed tortious actions and breach of the agreements under which the LLC operated. The derivative action does nothing more than allow the LLC to realize any present rights it already has.

The wording of K.S.A. 2000 Supp. 17-76,130 to K.S.A. 2000 Supp. 17-76,133 is clearly procedural in nature and defines the right to bring an existing action, describes the proper plaintiff, sets forth what the petition must contain, and allows for award of expenses. We hold all of these provisions are procedural in nature and apply to the actions pending in the three appealed cases. Implicit in this ruling is that it is constitutionally applied.

It is clear that Halley has the right and is empowered under the specific language of the KRLLCA to bring an action in the right of the LLC. Halley has appropriately requested benefits for the LLC in some counts of his counterclaim and petition, but in others he may have requested individual damages which are in fact derivative damages. We will not as an appellate court attempt to sort out these claims, as the trial court must do so once discovery is complete. In addition, it is important to point out that we have resolved the issues primarily based on our standard of review, and we express no opinion on the merit of Halley's or the LLC's claims which must be fully proved at trial.

*Other arguments*

Bill Creach's argument is misplaced that the provisions of K.S.A. 17-7631 show the legislature did not intend for derivative suits to be available against members or managers of a limited liability company. Reading 17-7631 with 17-7620 shows that 17-7631 is not a shield from liability to a member or manager who commits actionable conduct against the LLC but rather a codification of the limited liability of managers and members for debts owed by the LLC. Further, K.S.A. 17-7631 was included in the revised statute (K.S.A. 2000 Supp. 17-7688) along with the provisions specifically authorizing derivative suits, and such inclusion is contrary to an original intent to deprive members of the power to file a derivative suit.

Bill Creach's argument that there is no right for a breach of contract suit if such is not authorized in the operating agreement is disingenuous, not raised below, and simply wrong.

Bill Creach's argument that Halley cannot adequately represent the interests of the LLC under the language of K.S.A. 60-223a is without merit.

We will not reach or discuss the claims of res judicata or collateral estoppel arising out of Judge Koger's ruling in the Barnabe bankruptcy case, as such was not properly cross-appealed, not decided on the merits, and is not within the necessary requirements for either res judicata or collateral estoppel to have any effect in this case.

Additionally, we will also not reach or discuss the claims that count III of case No. 98CV1290 or count V of case No. 98CV4900 are legally deficient, as this question was not cross-appealed, and had it been, the record is not such that we could or should attempt to resolve such issues on a motion to dismiss. Judge Davis held in his summary judgment ruling that issues of fact remained, and we leave it to the trial court to resolve these questions at the pretrial.

While we may not have discussed every argument made or issue raised, they have been considered and found not to affect the decision we have reached.

Finally, we suggest that these cases either be consolidated or assigned to a single judge in the interest of judicial economy.

We affirm the ruling by Judge Davis in case No. 98CV237, denying the motions for summary judgment on Halley's counterclaim. We reverse the rulings by Judges Elliott and Russell in cases Nos. 98CV1290 and 98CV4900 and remand for further proceedings.

SIX, J., not participating.

ROBERT J. LEWIS, JR., J., assigned.