No. 85,439

STATE OF KANSAS, *Appellee*, v. STEVEN R. MUELLER, *Appellant*.
(27 P.3d 884)

Opinion filed July 13, 2001.

*Cory D. Riddle*, assistant appellate defender, argued the cause, and *Brent Getty*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the brief for appellant.

*Robert D. Hecht*, district attorney, argued the cause, and *Deborah L. Hughes*, assistant district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: Steven R. Mueller filed a motion to correct illegal sentence, which was denied. This appeal followed.

Mueller contends that K.S.A. 1993 Supp. 22-3717(f) unconstitutionally conditions the conversion of a parolee sentence and violates his equal protection rights.

In 1985, Mueller pled guilty to one count of aggravated robbery. He received an indeterminate sentence of 10 years to life. He was subsequently placed on parole and was on parole in 1993 when the Kansas Sentencing Guidelines Act (KSGA) was enacted. In July 1995, Mueller was returned to prison for a technical parole violation. He was eventually released on parole. In May 1999, he was again incarcerated for another technical violation of the conditions of his parole.

In January 2000, Mueller filed a motion to correct illegal sentence. He argued that K.S.A. 1993 Supp. 22-3717(f) was unconstitutional and that the court should convert the Shawnee County indeterminate aggravated robbery sentence.

The legislature enacted a "window" where an indeterminate sentence could be converted into a guidelines sentence for certain prisoners and parolees. This window lasted for 9 months. It is contained in K.S.A. 1993 Supp. 22-3717(f) and reads:

"If an inmate is sentenced to prison for a crime committed after July 1, 1993, while on parole or conditional release for a crime committed prior to July 1, 1993, the old sentence shall be converted into a determinate sentence and will run consecutive to the new sentence as follows:

(1) Twelve months for class C, D or E felonies or the conditional release date whichever is shorter;

(2) 36 months for class A or B felonies or the conditional release date whichever is shorter."

Nine months after its enactment (March 24, 1994), the legislature amended the statute by deleting the language allowing parolees to have prior indeterminate sentences converted upon the sentencing of a new crime committed while on parole. This court was faced with a similar question in *State v. Perez*, 269 Kan. 340, 11 P.3d 52 (2000). This court followed the reasoning in *Adams v. State*, 27 Kan. App. 2d 292, 5 P.3d 1002 (2000). In *Perez*, the defendant committed a technical parole violation while he was on parole. We said:

"Because Perez was not convicted of a new crime, the statute did not require that his sentence be converted from an indeterminate to a determinate sentence. A parolee convicted of a new crime would have had the sentence for his 'old' crime converted to a determinate sentence.

"The situation of a defendant convicted of a crime committed while on parole is different than that of a defendant returned to prison as a technical parole violator. The former will face an additional sentence, usually to be served consecutive to the sentence for which he or she was on parole. See K.S.A. 1993 Supp. 21-4720. The latter, who will not face a new sentence after being found in violation of the conditions of parole, will continue on parole or have it revoked, or be subjected to any order the Kansas parole board sees fit to enter. K.S.A. 1993 Supp. 75-5217(b).

"It is reasonable for the legislature to grant sentence conversions to parolees committing new crimes in order to bridge any gaps between pre-and post-KSGA

sentences. K.S.A. 1993 Supp. 22-3717(f) served as a bridge between two different statutory sentencing schemes for those who would otherwise be subject to both. K.S.A. 1993 Supp. 22-3717(f) is reasonably related to legitimate state interests. See [*State v.]Chiles*, 254 Kan. at 899." 269 Kan. at 343.

In *Adams*, the defendant did not commit a new crime while on parole and was not sentenced to prison for a new crime in the relevant time frame. He had his parole revoked for a "technical violation."

The Court of Appeals, in pertinent part, stated:

"Although one of the legislature's clearly intended purposes for enacting sentencing guidelines was to reduce prison overcrowding, the legislature also clearly intended to balance that intent by maintaining the public safety. See 254 Kan. at 903. By limiting conversion under this section to felony violators, the legislature intended to create a transition between pre-KSGA sentences and guidelines sentences. Restricting sentence conversion to cases in which post-KSGA sentences were added to pre-KSGA sentences is rationally related to the KSGA's goals of consistency and proportionality, as well as public safety, by diminishing the disparity in sentences where such disparity would most prominently appear. 254 Kan. at 894. The classification distinguishing felony violators of parole from technical violators imposed by K.S.A. 1993 Supp. 22-3717(f) does not impinge upon any fundamental interest.

. . . .

"The legislature is not required to articulate reasons for enacting laws. An appellate court will uphold a statute as long as it implements any rational purpose, even if the legislature never considered the purpose when enacting the statute. *State ex rel. Tomasic*, 265 Kan. at 794 (citing *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315, 124 L. Ed. 2d 211, 113 S. Ct. 2096 [1993]). Therefore, the district court did not err in dismissing Adams' K.S.A. 60-1507 motion. The classification created by K.S.A. 1993 Supp. 22-3717(f) is constitutional and inapplicable to convert Adams' indeterminate sentence." 27 Kan. App. 2d at 294.

Mueller argues that he has a protected liberty interest in parole and that in order to have an indeterminate sentence converted, a parolee is forced, unconstitutionally, to relinquish his or her parole by committing a new felony offense and being sentenced to prison for the new offense. This, Mueller asserts, violates the doctrine of unconstitutional conditions. When determining whether a statute violates the doctrine of unconstitutional conditions, our review is unlimited. The doctrine of unconstitutional conditions was origi-

nally applied by the United States Supreme Court in *Barron v. Burnside*, 121 U.S. 186, 30 L. Ed. 915, 7 S. Ct. 931 (1887).

The court in *Louisiana Pacific v. Beazer Materials & Services*, 842 F. Supp. 1243, 1248 (E.D. Cal. 1994), discussed the doctrine of unconstitutional conditions, stating:

> "The doctrine of unconstitutional conditions provides that the Government cannot condition the receipt of a government benefit on waiver of a constitutionally protected right. It functions to insure that the Government may not indirectly accomplish a restriction on constitutional rights which it is powerless to decree directly. *Perry v. Sindermann*, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)."

In *Frost Trucking Co. v. R.R. Comm.*, 271 U.S. 583, 593, 70 L. Ed. 1101, 46 S. Ct. 605 (1926), the United States Supreme Court set forth: "[C]onstitutional guarantees, so carefully safeguarded against direct assault, [should not be] open to destruction by the indirect, but no less effective process of requiring a surrender, which, though, in form voluntary, in fact lacks none of the elements of compulsion."

The doctrine is most often found in cases involving First Amendment rights. See *Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 686, 135 L. Ed. 2d 843, 116 S. Ct. 2342 (1996) (holding that public employees and independent contractors cannot be terminated for expressing unpopular political views or for association with unpopular political group). The doctrine has been applied to cases involving religion. See *Hobbie v. Unemployment Appeals Comm'n. of Fla.*, 480 U.S. 136, 140-41, 94 L. Ed. 2d 190, 107 S. Ct. 1046 (1987) (holding that employee who refused to work on the Sabbath could not be denied unemployment benefits). In fact, the doctrine of unconstitutional conditions is seldom applied outside the First Amendment context. Lawrence Tribe, American Constitutional Law § 10-8, p. 681 (2d ed. 1988). Although the doctrine has been in existence for over 100 years, it has been described as a "doctrine in search of a theory." Sullivan, *Unconstitutional Conditions and the Distribution of Liberty*, 26 San Diego L. Rev. 327 (1989).

When determining whether the unconstitutional conditions doctrine applies, courts consider the following factors: (1) the impor-

tance of the constitutional right involved; (2) the value of the benefit offered; (3) the propriety of the government discouraging exercise of the constitutional right; and (4) the effect of the government's practice on public policy. Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1415, 1422-28 (1989).

In the present case, the constitutional right involved is Mueller's liberty. The benefit offered is conversion of his indeterminate aggravated burglary sentence. In order for Mueller to have his indeterminate sentence converted and thus shortened, Mueller would have to commit and be sentenced for a new crime. In order for the doctrine of unconstitutional conditions to apply, there must be some advantage for the government in offering the benefit and in having the affected party relinquish a constitutional right. In other words, the inducement to compromise a party's constitutional rights must also benefit the government. See *Rankin v. McPherson*, 483 U.S. 378, 97 L. Ed. 2d 315, 107 S. Ct. 2891 (1987) (attempting to prevent hostility to political figures); *Perry v. Sindermann*, 408 U.S. 593, 597, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972) (attempting to prevent state employees from publicly criticizing university employment policies); *Wieman v. Updegraff*, 344 U.S. 183, 97 L. Ed. 216, 73 S. Ct. 215 (1952) (desire of government to have employees take an oath regarding their political affiliation); *Hall v. Ochs*, 817 F.2d 920, 924 (1st Cir. 1987) (holding that town could not attempt to condition defendant's liberty on signing of waiver of right to file civil charges against town and police).

Mueller's argument fails because it presupposes that the legislature wished to have new crimes committed and offered the benefit of indeterminate sentence conversion to obtain its goal while at the same time violating the constitutional rights of parolees. Obviously, this is not what the legislature intended when it enacted K.S.A. 1993 Supp. 22-3717(f). The public policy of the State is not to encourage crime. The doctrine of unconstitutional conditions does not apply in the present case.

Mueller next argues that his equal protection rights were violated by the enactment of K.S.A. 1993 Supp. 22-3717(f).

Whether a statute violates equal protection is a question of law over which this court has unlimited review. *Peden v. Kansas Dept.*

*of Revenue,* 261 Kan. 239, Syl. ¶ 1, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997). The concept of equal protection of the law is one which "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt,* 417 U.S. 600, 609, 41 L. Ed. 2d 341, 94 S. Ct. 2437 (1974).

In *Farley v. Engelken,* 241 Kan. 663, 667-68, 740 P.2d 1058 (1987), this court discussed equal protection claims, stating:

"When a statute is attacked on equal protection grounds, the general rule is that the statute is presumed constitutional, and the burden is on the party attacking the statute to prove otherwise. Only in cases involving 'suspect classifications' or 'fundamental interests' is the presumption of constitutionality displaced and the burden placed on the party asserting constitutionality to demonstrate a compelling state interest which justifies the classification. [Citation omitted.]"

The status of Mueller's aggravated battery sentence is not a fundamental interest and, therefore, we apply rational basis review. *Chiles v. State,* 254 Kan. 888, 895, 869 P.2d 707, *cert. denied* 513 U.S. 850 (1994). In *Chiles,* we set forth:

"With a rational basis review, relevance is the only relationship required between the classification and the objective. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. Insofar as the objective is concerned, a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it. The legislature's purpose in creating the classification need not be established. The classification must, however, bear a rational relationship to a legitimate objective. The rational basis test contains two substantive limitations on legislative choice: (1) legislative enactments must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals. These limitations amount to a prescription that all persons similarly situated should be treated alike." 254 Kan. at 895.

In *Chiles,* this court held that the retroactivity provision of the KSGA was not violative of the Equal Protection Clause of the United States Constitution or § 1 of the Kansas Constitution Bill of Rights. The classifications challenged in *Chiles,* however, involved the groups sentenced prior to the Act and those sentenced after the Act. 254 Kan. at 895. Mueller argues that *Chiles* is distinguishable from the facts of the present case as he asserts that the unconstitutional classifications raised in this case involve "law abid-

ing parolees and those parolees that violated their parole during the window." We agree. To the best of our knowledge, Mueller has been a law-abiding parolee in that he has not committed any new crimes, but he has technically violated his parole twice. Both of the technical violations occurred after the 9-month window created by the language in K.S.A. 1993 Supp. 22-3717(f).

Despite Mueller's assertion that the facts in this case are different from those in *Perez*, the facts in this case are legally indistinguishable from *Perez* and from the recent Court of Appeals decision in *Adams*.

In *Perez*, the parolee was released from prison on January 29, 1990. Perez then committed a technical violation of his parole and was returned to prison on April 26, 1994. Unlike Mueller, Perez committed his technical violation during the 9-month window created by K.S.A. 1993 Supp. 22-3717(f).

Perez subsequently moved the court to convert his sentence. The district court denied his motion. On appeal, Perez, like Mueller, argued that the classifications established by the enactment of K.S.A. 1993 Supp. 22-3717(f) violated his equal protection rights. This court disagreed, affirming the ruling of the district court. See also *Mueller v. State*, 28 Kan. App. 2d 760, 762-64, 24 P.3d 149 (2001) (equal protection rights not violated where parolee committed technical violation outside the 9-month window created by K.S.A. 1993 Supp. 22-3717[f]); *Adams*, 27 Kan. App. 2d at 293-94 (holding that Adams' equal protection rights were not violated by K.S.A. 1993 Supp. 22-3717[f] where Adams had committed a technical violation during the 9-month window created by the statute).

Mueller also argues that § 1 of the Kansas Constitution Bill of Rights affords greater protection than the Equal Protection Clause of the Fourteenth Amendment. This court has never read § 1 of the Kansas Constitution Bill of Rights in such a way and declines the invitation to do so at this time under the facts in this case.

Mueller's rights under the Equal Protection Clause of the United States Constitution and his rights under § 1 of the Kansas

Constitution Bill of Rights were not violated by K.S.A. 1993 Supp. 22-3717(f).

Affirmed.