(261 P.3d 551)
No. 104,749

JARROD W. ROY, *Appellant*, v. DENNIS E. EDMONDS, Deceased, *Appellee*, and CAROLYN ROY, *Defendant*.

Opinion filed June 24, 2011.

*Brant A. McCoy*, of McCoy Law Firm, LLC, of Olathe, *John P. Gerstle, II*, of John P. Gerstle, II, P.A., of Olathe, and *Michael S. Jones*, of The Jones Law Firm, P.A., of Overland Park, for appellant.

*David J. Brown*, of The Law Office of David J. Brown, LC, of Lawrence, for appellee.

Before LEBEN, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Jarrod W. Roy appeals from a judgment of the trial court dismissing his paternity action for failure to state a claim upon which relief can be granted. In addition, the trial court held that Jarrod's paternity action was barred by the 3-year statute of limitations under K.S.A. 38-1115(a)(2). Jarrod raises three issues on appeal: (1) that the trial court erred in holding his paternity action was barred by the applicable statute of limitations; (2) that K.S.A. 38-1115(a)(1) and (2) violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (3) that dismissing his paternity action before genetic testing can be completed violates public policy. We disagree. Accordingly, we affirm.

Jarrod's mother, Carolyn Roy, married Dennis E. Edmonds on June 23, 1965. Later, the couple divorced and a decree of divorce was entered in Franklin County, Kansas, on May 2, 1967. The decree of divorce contained a provision that stated the divorce was not final until 60 days following the date the decree of divorce was entered. Nevertheless, Carolyn married Daniel M. Roy, Jr., on June 3, 1967, only 32 days after the decree of divorce was entered. Carolyn maintains that after she married Daniel, she had sexual intercourse with Edmonds and became pregnant with Jarrod. Jarrod was born on October 9, 1968. Daniel is listed as Jarrod's father on Jarrod's birth certificate. Carolyn and Daniel were divorced in 1970, and both parties signed a stipulation that stated Jarrod and another child were born to Carolyn and Daniel. Moreover, Daniel was required to pay child support for Jarrod, and Daniel was given visitation rights with Jarrod.

According to Jarrod, when he was 15 years old, Carolyn told him that his natural father was Edmonds. Jarrod contended that he attempted to contact Edmonds, but Edmonds' girlfriend rebuffed his attempt to establish a parental relationship with Edmonds.

Edmonds died intestate on December 17, 2008, in Douglas County, Kansas. Barbara Dyer, Edmonds' sister, was appointed administrator of Edmonds' estate. When Dyer learned that Jarrod might be a potential heir, she filed a petition requesting an order for genetic testing. The probate court determined that it did not have jurisdiction to order genetic testing.

In February 2010, Jarrod filed a petition for determination of paternity in Franklin County, Kansas, under the Kansas Parentage Act (KPA), K.S.A. 38-1110 *et seq*. In the petition, Jarrod alleged that it would be in his best interests to determine that Edmonds was his father, not Daniel, because he would be the sole heir of Edmonds' estate. Jarrod attached to his petition an affidavit from Carolyn. In the affidavit, Carolyn alleged that Edmonds was Jarrod's father and that she and Jarrod attempted to contact Edmonds when Jarrod was 15 years old but Edmonds' girlfriend prevented them from seeing Edmonds. In addition, Jarrod moved to have genetic testing performed on himself and Edmonds.

Edmonds' estate (Estate) moved to dismiss the petition under K.S.A. 60-212(b)(1) for lack of subject matter jurisdiction. The Estate contended that the action was not brought within 3 years after Jarrod reached the age of majority as required by K.S.A. 38-1115(a)(2). The Estate also argued that Jarrod had failed to state a claim for which relief could be granted. As a result, the Estate asserted that dismissal would be appropriate under K.S.A. 60-212(b)(6). Moreover, the Estate maintained that the paternity action should be dismissed because venue was not proper in Franklin County, Kansas. The Estate contended that the action should have been brought in Douglas County, Kansas, where Edmonds' probate case was filed.

Jarrod responded to the Estate's motion, arguing that K.S.A. 38-1115(a)(1) and (2) violated the Equal Protection Clause. Jarrod also argued that venue was proper in Franklin County, Kansas. The Franklin County District Court disagreed and ordered that venue was proper in Douglas County District Court. When the case was transferred to the Douglas County District Court, the Estate renewed its motion to dismiss for the same reasons it made in the Franklin County District Court.

The Douglas County District Court held that Jarrod's paternity action was barred by the statute of limitations under K.S.A. 38-1115(a)(2). As a result, the trial court dismissed Jarrod's paternity action based on the lack of subject matter jurisdiction and based on a failure to state a claim upon which relief can be granted.

## Standards of Review

"When a trial court has granted a motion to dismiss for failure to state a claim, an appellate court must assume as true all well pleaded facts in plaintiff's petition, along with any inferences that can be reasonably drawn therefrom. *Rector v. Tatham*, 287 Kan. 230, 232, 196 P.3d 364 (2008). Nevertheless, the appellate court is not required to accept conclusory allegations as to the legal effects of the events if the allegations are not supported or are contradicted by the description of events. *Halley v. Barnabe*, 271 Kan. 652, 656, 24 P.3d 140 (2001). 'The appellate court then decides whether those facts and inferences state a claim based on plaintiff's theory or any other possible theory. If so, the dismissal by the district court must be reversed. [Citation omitted.]' 287 Kan. at 232.

"In addition, the issue before us requires interpretation of several statutes: 'Interpretation of a statute is a question of law, and an appellate court's review is unlimited. [The] appellate court is not bound by the district court's interpretation of a statute. [Citation omitted.]' *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). The trial court's determination requires us to interpret the applicability of the statute[] of limitations . . . ." *Hemphill v. Shore*, 44 Kan. App. 2d 595, 600, 239 P.3d 885 (2010), *aff'd in part and rev'd in part on other grounds* 295 Kan. 1110, 289 P.3d 1173 (2012).

## Presumption of Paternity

Jarrod argues that the trial court erred in finding his claim was barred by the statute of limitations provision under K.S.A. 38-1115(a)(2).

The trial court ruled that it lacked subject matter jurisdiction to hear this paternity action because Jarrod had failed to comply with the applicable statute of limitations. The governing statute of limitations for parentage actions is set forth in K.S.A. 38-1115, which states in relevant part:

"(a) A child or any person on behalf of such child, may bring an action:

(1) At any time to determine the existence of a father and child relationship presumed under K.S.A. 38-1114 and amendments thereto; or

(2) at any time until three years after the child reaches the age of majority to determine the existence of a father and child relationship which is not presumed under K.S.A. 38-1114 and amendments thereto."

To determine whether Jarrod filed his paternity action within the applicable statute of limitations, it is critical to determine which subsection of K.S.A. 38-1115 applies. To answer that question, it is necessary to review K.S.A. 38-1114, which states in relevant part:

"(a) A man is presumed to be the father of a child if:

(1) The man and the child's mother are, or have been, married to each other and the child is born during the marriage or within 300 days after the marriage is terminated by death or by the filing of a journal entry of a decree of annulment or divorce.

(2) Before the child's birth, the man and the child's mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is void or voidable and:

. . . .

(B) if the attempted marriage is void, the child is born within 300 days after the termination of cohabitation.

. . . .

(4) The man notoriously or in writing recognizes paternity of the child, including but not limited to a voluntary acknowledgment made in accordance with K.S.A. 38-1130 or 65-2409a, and amendments thereto.

(5) Genetic test results indicate a probability of 97% or greater that the man is the father of the child.

(6) The man has a duty to support the child under an order of support regardless of whether the man has ever been married to the child's mother."

K.S.A. 38-1115(a)(1) states that a child may bring an action at any time to determine the existence of a father and child relationship presumed under K.S.A. 38-1114. Nevertheless, when a father and child relationship is not presumed under K.S.A. 38-1114, the child may bring the action at any time until 3 years after the child reaches the age of majority. K.S.A. 38-1115(a)(2). K.S.A. 38-1114(a)(5) states that a man is presumed to be a child's father if "[g]enetic test results indicate a probability of 97% or greater that the man is the father of the child." Jarrod argued that the presumption in K.S.A. 38-1114(a)(5) would be applicable to his situation if the trial court ordered genetic tests to be performed. The trial court, however, determined that in order for the "at any time" language of K.S.A. 38-1115(a)(1) to apply, the evidence creating a presumption must exist when the paternity action is commenced. Because there was no evidence that Edmonds was Jarrod's presumed father when Jarrod filed his petition, the trial court determined that K.S.A. 38-1115(a)(2) applied.

Moreover, because Jarrod was 41 years old when he brought his paternity action, the trial court determined that Jarrod was outside the limitation period of K.S.A. 38-1115(a)(2).

Nevertheless, Jarrod argues that the trial court erred in dismissing his claim before genetic tests could be performed to determine whether Edmonds was a presumed father under K.S.A. 38-1114. According to Jarrod, the plain language of K.S.A. 38-1115 does not require the genetic tests to have been performed before the presumption of paternity applies. We disagree.

As a court, we follow the plain meaning rule. This rule states that when the language of a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. The court will not speculate on legislative intent and will not read the statute to add something not readily found in it. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607-08, 214 P.3d 676 (2009); *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010); *Frick v. City of Salina*, 289 Kan. 1, 8, 208 P.3d 739 (2009); see *Wiehe v. Kissick Construction Co.*, 43 Kan. App. 2d 732, 752, 232 P.3d 866 (2010).

It is important to note that Jarrod does not contend that any genetic testing has ever been done indicating "a probability of 97% or greater" that Edmonds is Jarrod's father. Accordingly, the issue in this case can be stated as follows: When does genetic testing under K.S.A. 38-1113(a)(5) have to be done?

K.S.A. 38-1114(a)(5) states as follows: "A man is presumed to be the father of a child if: . . . [g]enetic test results indicate a probability of 97% or greater that the man is the father of the child." The legislature's use of the conditional term "if" in K.S.A. 38-1114(a) governs subsection (a)(5). Consequently, K.S.A. 38-1114(a)(5) plainly requires an external event to occur: that genetic test results be performed before the paternity action is commenced. Jarrod's position that K.S.A. 38-1114(a)(5) does not require that genetic test results be performed before a paternity action is filed under the KPA is clearly flawed.

In addition, this exact issue was considered by this court in *In re Estate of Foley*, 22 Kan. App. 2d 959, 925 P.2d 449, *rev. denied* 261 Kan. 1085 (1996). In *Foley*, this court determined that for K.S.A. 1995 Supp. 38-1115(a)(1) to apply, the facts proving the presumption must exist before the cause of action commences.

Specifically, this court held that "genetic test results giving rise to a presumption of paternity must be known before an action is commenced under the KPA. A contrary construction would render the 3-year statute of limitations in K.S.A. 1995 Supp. 38-1115(a)(2) meaningless until genetic testing has been completed under K.S.A. 1995 Supp. 38-1118." 22 Kan. App. 2d at 962. If no genetic test results exist to establish a paternity presumption before the parentage action is commenced, K.S.A. 38-1115(a)(2) applies. See 22 Kan. App. 2d at 962. Our Supreme Court cited K.S.A. 38-1114(a)(5) and *Foley* in another case, stating in dicta that a presumption based on genetic test results must relate to genetic testing that occurred before the filing of the paternity action. *Reese v. Muret*, 283 Kan. 1, 6, 150 P.3d 309 (2007).

Jarrod argues that *Foley* is incorrect because there is nothing in the plain language of the statute that requires genetic test results to be known before an action is commenced under the KPA. Nevertheless, K.S.A. 38-1115(a)(1) states that a paternity action may be brought at any time to determine a father and child relationship presumed under K.S.A. 38-1114, which includes genetic test results that indicate a 97% or greater probability that the man is the child's father. See K.S.A. 38-1114(a)(5). As stated earlier, if genetic tests have not been performed, under the plain language of the statute, no presumption exists.

As a result, the trial court properly dismissed Jarrod's petition for failure to bring his cause of action within 3 years of his reaching the age of majority as required by K.S.A. 38-1115(a)(2).

*Equal Protection Claim*

Next, Jarrod argues that the trial court erred in finding that K.S.A. 38-1115(a)(1) and (2) do not violate the Equal Protection Clause. "Whether a statute violates equal protection is a question of law over which this court has unlimited review. [Citation omitted.]" *State v. Mueller*, 271 Kan. 897, 902-03, 27 P.3d 884 (2001), *cert. denied* 535 U.S. 1001 (2002).

Jarrod contends that K.S.A. 38-1115(a) creates equal protection problems because it treats legitimate children differently than illegitimate children. Jarrod classifies an illegitimate child as a child

not born to a marriage. The United States Supreme Court has mandated equal legal treatment of legitimate and illegitimate children in a broad range of substantive areas under the Equal Protection Clause. See *Gomez v. Perez*, 409 U.S. 535, 93 S. Ct. 872, 35 L. Ed. 2d 56 (1973); *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S. Ct. 1400, 31 L. Ed. 2d 768 (1972).

Nevertheless, Jarrod has failed to show that the statutory scheme for bringing a paternity action discriminates between legitimate and illegitimate children. Jarrod acknowledges that K.S.A. 38-1115(a) only creates separate classifications for children with a presumed father and children without a presumed father. Jarrod states that any child who brings a paternity action under K.S.A. 38-1115(a)(2) is necessarily an illegitimate child, because a child born during a marriage would have a presumed father. But Jarrod also concedes that if the presumption arises under K.S.A. 38-1114(a)(2), (3), or (4), the child would be illegitimate but could still bring a paternity action under K.S.A. 38-1115(a)(1).

Jarrod, however, contends that even though K.S.A. 38-1115(a) does not, on its face, create a classification based on illegitimacy, the practical effect of reading it in conjunction with K.S.A. 38-1114 creates a suspect classification. Jarrod offers nothing to support this argument. Jarrod cites cases where statutes limiting the time in which an illegitimate child can bring a paternity suit have been barred. See *Clark v. Jeter*, 486 U.S. 456, 108 S. Ct. 1910, 100 L. Ed. 2d 465 (1988); *Pickett v. Brown*, 462 U.S. 1, 103 S. Ct. 2199, 76 L. Ed. 2d 372 (1983); *Mills v. Habluetzel*, 456 U.S. 91, 102 S. Ct. 1549, 71 L. Ed. 2d 770 (1982). But even *Mills* recognized that the states have a legitimate interest in avoiding the litigation of stale or fraudulent claims, which justified periods of limitation sufficient to prevent loss or diminution of evidence or fraudulent claims. 456 U.S. at 99.

Because Jarrod has failed to show that K.S.A. 38-1115(a)(1) and (2) violate the Equal Protection Clause, his argument fails.

*Public Policy Claim*

Finally, Jarrod argues that dismissing his case under K.S.A. 38-1115(a)(2) because genetic results do not yet exist violates public

policy. It does not seem that Jarrod raised this issue in the trial court. Issues not raised before the trial court cannot be raised on appeal. *In re Care & Treatment of Miller,* 289 Kan. 218, 224-25, 210 P.3d 625 (2009). There are exceptions to this rule, but Jarrod has not argued that any of them apply. See *In re Estate of Broderick,* 286 Kan. 1071, 1082, 191 P.3d 284, *cert. denied* 129 S. Ct. 1320 (2008) (listing exceptions).

In any event, if Jarrod learned that Edmonds was his father when Jarrod was 15 years old, as he alleges in his petition, then Jarrod had approximately 6 years in which to bring his paternity action. As stated previously, states have a legitimate interest in avoiding the litigation of stale or fraudulent claims. *Mills,* 456 U.S. at 99. Consequently, the limitation period in K.S.A. 38-1115(a)(2) is not against public policy.

Affirmed.

\* \* \*

LEBEN, J., concurring: I agree with the majority that a presumption of paternity based on genetic testing must be established prior to the initiation of a paternity action in order for K.S.A. 38-1114(a)(5) to apply. The question is important only in determining when the statute of limitations bars a paternity claim like the one Jarrod Roy tries to pursue here.

For a presumed father, a paternity claim may be brought at any time; for all others, the action must be brought within 3 years of the child reaching the age of majority, which is 18. See K.S.A. 38-1115(a). If a person claiming paternity could obtain genetic testing *after* filing the paternity action, then there would be no statute of limitations at all—a person could wait, as Jarrod Roy did, until he was in his 40's to bring the action even though the father was not otherwise a presumptive father under the statute. Obviously, such an interpretation of these statutes would make no sense: the legislature took the time and effort to establish a 3-year time limit in K.S.A. 38-1115(a)(2).

Our court has already decided this issue in a well-reasoned, published opinion in *In re Estate of Foley,* 22 Kan. App. 2d 959, 925 P.2d 449, *rev. denied* 261 Kan. 1085 (1996). I would affirm the

district court's interpretation of K.S.A. 38-1114(a)(5) and K.S.A. 38-1115(a)(2) based on *Foley* and the reasoning set out in that opinion.