No. 86,022

FRANCES BARRETT, Individually and on behalf of the heirs-at-law of ROBERT ALEXANDER BARRETT; and as Administratrix of the Estate of ROBERT ALEXANDER BARRETT, *Appellee*, v. UNIFIED SCHOOL DISTRICT NO. 259, a/k/a Wichita Public School System; and DAN JOHNSON, *Appellants*.

(32 P.3d 1156)

Opinion filed October 19, 2001.

*Alan L. Rupe*, of Husch & Eppenberger, L.L.C., of Wichita, argued the cause, and *S. Douglas Mackay* and *Anthony M. Singer*, of the same firm, were on the brief for appellants.

*Kyle J. Steadman*, of Arden J. Bradshaw & Associates, of Wichita, argued the cause and was on the brief for appellee.

*William Scott Hesse*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the briefs for intervenor State of Kansas.

*Donald L. Moler, Jr.,* and *Sandra Jacquot* were on the brief for *amicus curiae* League of Kansas Municipalities.

*Lawton M. Nuss,* of Clark, Mize & Linville, Chartered, of Salina, was on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

DAVIS, J: Robert Alexander Barrett, a 12th grade high school student at Southeast High School in Wichita, collapsed on the practice field after participating in the first mandatory football practice of the 1998 season. He died in the hospital the next day. A wrongful death action was filed, and this is an interlocutory appeal in that action by Unified School District No. 259 and the coach, Dan Johnson, from a partial summary judgment holding that the recreational use exception to the Kansas Tort Claims Act (KTCA), K.S.A. 75-6104(o), denied equal protection and was, therefore, unconstitutional as applied to the plaintiff under the facts of this case. The trial court also ruled that the discretionary function exception to the KTCA, K.S.A. 75-6104(e), was not available to the defendants "because of the existence of a mandatory duty of defendants to protect its student athletes from heat exposure." We reverse and remand for further proceedings.

On August 17, 1998, Robert Alexander Barrett (Alex) attended the first football practice of the season at Wichita Southeast High School. This practice was mandatory and began with warmup and stretching exercises at 8 a.m. The temperature at the beginning of practice was approximately 83 degrees. The players did not wear pads; however, they did wear helmets. They were required to keep their helmets on while participating in the drills but could remove them during water breaks.

Between 8:15 a.m. and 10:15 a.m., Coach Johnson and his assistants instructed on tackling form and the fundamentals of offense and defense. Alex participated with the offensive line under the direct supervision of Coach Johnson. Players were afforded a 5-minute water break during every 20 minutes of practice at which time they could get water from the "water ring," a watering device that accommodated 11 players at a time or from their own jugs or bottles. There were no other rest breaks during the session.

At 10:15 a.m., a 45-minute break was held. Practice resumed at 11 a.m. at which time the temperature was higher than it had been earlier in the morning. Between 11 a.m. and 12:50 p.m., Alex continued to work with the offensive line under the direct supervision of Coach Johnson. At 12:50 p.m., circuit conditioning started which consisted of small groups working at one of five different conditioning stations manned by the coaches. A group of players would spend 4 minutes at each station, have a 2-minute rest period, and then rotate to the next station.

After the first two conditioning stations, Alex told a member of the coaching staff that he did not feel well. Assistant Coach Al Hobson instructed Alex to go to the water ring and get a drink. Coach Johnson saw Alex at the ring and shouted to see if he was okay. Alex was drinking water and did not answer. After getting a drink, Alex returned to the conditioning drills. While at Assistant Coach Fluty's station, Alex asked and was allowed to sit out of the drill. Alex told Fluty that he was hot and tired; Fluty instructed Alex to get a drink of water.

After the conditioning drills, the team began to leave the field. Alex collapsed and was transported by ambulance to a hospital. He died the next day.

Wichita Southeast's Athletic Director Bill Faflick distributed a "Coaches Handbook" to all coaches at the school prior to the first mandatory practice. The handbook outlined the duties and responsibilities of the coaches. On August 1, 1998, U.S.D. No. 259 distributed a memorandum to all the athletic directors of its schools on heat illness prevention which instructed them to discuss prevention with their coaches. Faflick and Coach Johnson discussed the prevention of such illnesses. The Kansas State High School Athletic Association also issued warnings regarding heat stress and the importance of gradual acclimatization to its member schools. U.S.D. No. 259 had also adopted policies that made student safety a concern and responsibility of each school's administration, teachers, and staff.

The Action

Frances Barrett, Alex's mother, filed suit individually and as administratrix of Alex's estate against U.S.D. No. 259 and Coach Dan

Johnson, claiming negligence and gross negligence. Barrett filed a motion for partial summary judgment alleging that the defendants were not entitled as a matter of law to rely on K.S.A. 75-6104(o), the recreational use exception to the KTCA, because its application to cases where the injury is caused by a coach's negligence and not by a condition of the property violates equal protection under the United States Constitution and §§ 1 and 2 of the Kansas Constitution Bill of Rights. She also alleged that the defendants were not entitled to immunity under the discretionary function exception to the KTCA found in K.S.A. 75-6104(e), because defendants owed a duty of care to the students. The defendants countered with their own motions for summary judgment.

Partial Summary Judgment

The trial court ruled that the application of the recreational use exception under the KTCA to cases involving coaching negligence where the injury was not caused by a condition of the recreational property violated equal protection because it created a distinction between similarly situated students based solely on the location of the injury without a rational basis. The court also concluded that the discretionary function exception under the KTCA was not applicable as the school owed a general duty of care to its students, and further, had issued safety policies and guidelines which reinforced this duty of care. The trial court denied the defendants' motions for summary judgment.

The defendants asked the trial court to certify its rulings for interlocutory appeal pursuant to K.S.A. 60-2102(b). The State of Kansas also moved to intervene and asked the trial court to certify the case for interlocutory appeal. The trial court sustained both motions. Our jurisdiction is pursuant to K.S.A. 60-2101(b), granting this court original jurisdiction as a matter of right in those cases where a statute has been held to be unconstitutional.

U.S.D. 259, Coach Dan Johnson, intervenor State of Kansas, and *amici curiae* League of Kansas Municipalities and Kansas Association of Defense Counsel argue that the trial court erred in finding that the recreational use exception, as applied to cases involving coaching negligence where the injury is not caused by a condition

of the recreational property, violated the Equal Protection Clauses of both the Kansas and the United States Constitutions. The defendants contend that such a conclusion is not supported by the case law and further argue that a rational basis exists for treating similarly situated persons differently under the law.

## Constitutionality of the Recreational Use Exception to the Kansas Tort Claims Act

### Standard of Review

On appeal from a trial court's ruling that a particular statute is unconstitutional, an appellate court applies a de novo standard of review. *Battrick v. State*, 267 Kan. 389, 391, 985 P.2d 707 (1999). The burden of one asserting the unconstitutionality of a particular statute is a weighty one. This is as it should be for the enacted statute is adopted through the legislative process ultimately expressing the will of the electorate in a democratic society. Thus, when approaching the review of a claim of unconstitutionality, certain basic principles of review are observed.

First, the constitutionality of a statute is presumed and all doubts must be resolved in favor of its validity. Before a statute may be stricken down the statute must clearly violate the constitution. This court's duty is to uphold the statute under attack rather than defeat it; if there is any reasonable way to construe the statute as constitutionally valid, that should be done. Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. *State ex. rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 300, 955 P.2d 1136 (1998).

The trial court found the recreational use exception, as applied in the case at hand, violated equal protection under the United States Constitution and §§ 1 and 2 of the Kansas Constitution Bill of Rights. We have interpreted §§ 1 and 2 of the Kansas Constitution Bill of Rights to be counterparts to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. See *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, Syl. ¶ 12, 701 P.2d 1314 (1985).

### Equal Protection

Whether a statute violates equal protection is a question of law over which this court has unlimited review. The concept of equal

protection of the law is one which "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *State v. Mueller*, 271 Kan. 897, Syl. ¶¶ 6 and 7, 27 P.3d 884 (2001). When a statute is attacked on equal protection grounds, the general rule is that the statute is presumed constitutional, and the burden is on the party attacking the statute to prove otherwise. Only in cases involving "suspect classifications" or "fundamental interests" is the presumption of constitutionality displaced and the burden placed on the party asserting constitutionality to demonstrate a compelling state interest which justifies the classification. *Mueller*, 271 Kan. 897, Syl. ¶ 7.

The trial court found in this case that K.S.A. 75-6104(o) improperly distinguished between similarly situated students based on the location of the tort. This legislative classification does not involve "suspect classifications" or "fundamental interests" and the presumption of constitutionality applies. Moreover, the rational basis level of scrutiny applies, and the classification will be upheld if it is rationally related to a legitimate legislative purpose. See *Gleason v. Samaritan Home*, 260 Kan. 970, 988, 926 P.2d 1349 (1996).

In *State v. Mueller*, we said:

"With a rational basis review, relevance is the only relationship required between the classification and the objective. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. Insofar as the objective is concerned, a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it. The legislature's purpose in creating the classification need not be established. The classification must, however, bear a rational relationship to a legitimate objective. The rational basis test contains two substantive limitations on legislative choice: (1) legislative enactments must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals. These limitations amount to a prescription that all persons similarly situated should be treated alike." State v. Mueller, 271 Kan. 897, Syl. ¶ 8.

A statute is rationally related to an objective if the statute produces effects that advance, rather than retard or have no bearing on, the attainment of the objective. As long as the regulation is positively related to a conceivable legitimate purpose, it passes scrutiny. *State ex rel. Tomasic v. Unified Gov't of Wyandotte County/Kansas City*, 165 Kan. 779, 793, 962 P.2d 543 (1998).

" 'The "reasonable basis" test is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power, even if the statute results in some inequality. Under the reasonable basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " *Injured Workers of Kansas v. Franklin,* 262 Kan. 840, 847, 942 P.2d 591 (1997).

### K.S.A. 75-6104(o)

Under the recreational use exception to the KTCA a governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from "any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury." K.S.A. 75-6104(o). Immunity under K.S.A. 75-6104(o) depends on the character of the property in question and not the activity performed at any given time. The plain wording of the statute only requires that the property be intended or permitted to be used for recreational purposes, not that the injury occur as the result of recreational activity. *Jackson v. U.S.D. 259,* 268 Kan. 319, Syl. ¶ 6, 995 P.2d 844 (2000).

According to the plain language of the statute and our previous decisions regarding the statute, the recreational use exception applies to this case. In *Nichols v. U.S.D. No. 400,* 246 Kan. 93, 785 P.2d 986 (1990), a high school student at football practice was injured running from the practice field to the locker room when he stepped into a grassy waterway and stumbled. The student filed suit alleging negligent supervision. We rejected the argument that the recreational use exception should not apply to supervised activities and should apply only to a defective condition of the premises. 246 Kan. at 95-97. We held that the recreational use statute applied and that the school district was immune from liability for ordinary negligence under the facts. 246 Kan. at 95-96. See *Jackson v. U.S.D. 259,* 268 Kan. at 324 (summarizing *Nichols* as holding that "[s]chool districts are not liable for injuries which are the result of ordinary negligence and which occur on or near a football play-

ing field"). Similarly, in *Jackson*, we again rejected the contention that the recreational use exception did not apply to supervised activities or to injuries caused by negligent supervision. 268 Kan. at 332-33.

Alex died as a result of activity which occurred on a football field during football practice. His death is alleged to have resulted from negligent supervision. We conclude as we did in both *Nichols* and *Jackson* that the recreational use statute applies. Whether, however, application of the recreational use exception under K.S.A. 75-6104(o) violates the Equal Protection Clause is a question of first impression for this court.

## Discussion and Analysis

The trial court, using a rational basis standard, found that the application of the statute to a case involving coaching negligence where the injury was not caused by a condition of the recreational property violated equal protection because it created a distinction between students based solely on the location of the injury. In making its finding, the trial court stated:

"It is the application of the recreational use exception to the immunity statute to the same classes of people under different life situations that creates 'unequal treatment' of constitutional magnitude. For example, the child injured while participating in mandatory physical classes faces proof of gross or wanton negligence if the injury occurred in the gym because the school and teacher are entitled to qualified immunity under those circumstances. When the same child is injured in the same way under the charge of the same teacher, but that day the teacher conducted the class in the classroom, the student need only show ordinary negligence. When the science teacher wishes to illustrate principles of acceleration by launching rockets, injury to a participating child only requires a showing of ordinary negligence if the activity is done in a parking lot, but requires a showing of gross and wanton negligence if done on the football field. The student tort victim, injured on the gym floor or playing field, must prove their school and teacher guilty of gross and wanton negligence, while their classmates injured in the same way at the hands of the same teacher in a traditional classroom need only show ordinary negligence. The same classes of people are discriminated against solely based on the location of the tort, a distinction with no sensible difference. Such a rule creates a double standard without a reasonable basis, a constitutional anomaly."

The trial court then stated that the "most stunning, and persuasive, argument of the plaintiff" was set out in a series of hypothetical situations which the trial court then quoted. In these hypothetical situations, a football player for Wichita South High School is injured in a game against Bishop Carroll High School due to coaching negligence. In the first hypothetical situation the game is played at Wichita South and due to the recreational use exception, the player would be unable to recover unless he shows gross and wanton negligence. In hypothetical two, however, the game is being played at Bishop Carroll, whose recreational facility is not public. Therefore, in hypothetical two, the player could recover for simple negligence. The trial court stated:

"The same actions by the same coach being held to two different standards of care dependent solely upon the actions occurring at Wichita [South] or Bishop Carroll High Schools graphically proves the operation of the recreational use exception to the Kansas Tort Claims Act treats indistinguishable students differently. In upholding such a discriminatory distinction, Kansas courts are providing less than equal protection to physical education students and student-athletes than their counterparts injured while participating in a traditional classroom. Even if the focus is on athletes, the same illogical result occurs. For example, suppose the Southeast football coach instructed his team to run on the streets of Wichita for the conditioning portion of the practice. (Track and cross-country conditioning is routinely done in that manner.) Alex's injury happening on the streets would have left his representative with only a negligence burden of poof, rather than one of gross and wanton negligence because of his death occurring on the football practice field."

The problem with the trial court's determination is that it does not fully take into account the legitimate purpose of the legislation and whether the statute is rationally related to that purpose. We have stated:

"The purpose of K.S.A. 75-6104(o) is to provide immunity to a governmental entity when it might normally be liable for damages which are the result of ordinary negligence. This encourages governmental entities to build recreational facilities for the benefit of the public without fear that they will be unable to fund them because of the high cost of litigation. The benefit to the public is enormous. The public benefits from having facilities in which to play such recreational activities as basketball, softball, or football, often at a minimal cost and sometimes at no cost. The public benefits from having a place to meet with others in its community." *Jackson*, 268 Kan. at 331.

Certainly, the encouragement of the building of recreational facilities for the use of the public is a legitimate purpose. The statute in question seeks to encourage the development of such facilities, and it does so by allowing those facilities immunity for simple negligence. This immunity tradeoff is a public policy decision by the legislature, which has the power to reinstate governmental immunity, subject to constitutional strictures. *Brown v. Wichita State University*, 219 Kan. 2, 8, 547 P.2d 1015 (1976). In *Brown*, we stated: "It must be conceded the legislature is better equipped to resolve the difficult policy questions inherent in the field of governmental immunity. As judges our desire to achieve what may seem fair to us as individuals cannot overcome the laws enacted by our duly elected legislators." 219 Kan. at 9.

The trial court recognized the purpose of the statute but concluded that

"[g]ranting a coach and school district qualified immunity when faced with a claim based on the coach's acts and omissions, and not on a condition of the property, does not encourage governmental entities to build recreational facilities for the benefit of the public without the fear of lawsuits. It does something more and different than that. It permits unlawful and negligent activities to occur on the recreational use property."

The trial court's determination is incorrect and reflects exactly the judicial usurpation of policymaking derided in *Brown*. The hypothetical situations reflected in the trial court's opinion likewise fail to show that the legislation distinguishes between similarly situated persons without a rational basis.

It is true that a student in a gym is arguably similarly situated as one in a classroom. However, distinguishing between a student injured in the gym and one who is injured in the classroom is rationally related to the purpose of the statute. The school district needs little incentive to create classrooms; however, the same cannot be said of recreational facilities such as gyms and football fields. While these facilities undoubtedly enhance the educational process, they also provide value to the public as places for recreational activities. The statute encourages their development by a grant of limited governmental immunity. In a similar manner, distinguishing between a student injured by a rocket demonstration on the

football field as opposed to a parking lot is rationally related to the statute in that schools on their own may develop parking lots without a statutory incentive, while they may not do so with regard to recreational facilities. The recreational facility is different from either a classroom or a parking lot in this regard, because its value to the public and to the students is different, and the potential for injury in its use, whether by student or the public and, therefore, for financially draining lawsuits, is greater. Absent a limited grant of immunity for negligence, a school district may decide not to provide recreational facilities, although it would still provide classrooms and parking lots absent such a grant. The same may be said for public streets, which was also a hypothetical used by the trial court to justify its position.

Further, the extension of the grant to supervised activities such as coaching negligence also furthers the purpose of the statute. Many activities which take place in recreational settings are supervised, whether such activities are engaged in by students or the public, and recreational activities in and of themselves provide a large potential for injuries. The legislature has determined that such an extension of immunity is necessary to encourage the development of such facilities. It cannot be said that such an extension is " 'wholly irrelevant to the achievement of the State's legitimate objective.' " See *Injured Workers of Kansas v. Franklin*, 262 Kan. at 847.

As for what the trial court found to be the plaintiff's "most stunning, and persuasive" argument concerning a football player injured at either a public field or a private field, the State, as intervenor, quotes from *Brown v. Wichita State University*, 219 Kan. at 14, for the proposition that "withholding a legal remedy for persons injured by the state, while allowing a remedy for a non-governmental tortious activity, or a municipal government's tortious activity, is not discriminatory government action." This case is not on point because in the hypothetical situation, whether the negligence occurs on a public field or private field, the State is still the negligent party. However, once again, the distinction between negligence which occurs on a public field and that which occurs on a private field has a rational basis. Private schools operate under dif-

ferent incentive systems than public schools and their recreational facilities are generally not open to the public in the same way as those of public schools. The granting of immunity for activity at a public recreational facility which would be actionable if it occurred at a private recreational facility reasonably advances the legitimate statutory goal of encouraging the development of public recreational facilities.

The plaintiff argues that the case at hand is similar to *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, 596 P.2d 446 (1979). In *Flax*, this court held that a statute which, when read broadly, granted immunity to the Kansas Turnpike Authority for negligence was a violation of equal protection as applied to the Kansas Turnpike Authority. 226 Kan. at 6-11. In so doing, the court noted that had the accident occurred on any other state highway, the State would be liable. 226 Kan. at 6-8. *Flax* was a 4-3 decision, with Justice McFarland, joined by Chief Justice Schroeder and Justice Fromme dissenting on the equal protection question. The dissent pointed to the above-quoted language from *Brown v. Wichita State University*, holding: " 'As judges our desire to achieve what may seem fair to us as individuals cannot overcome the laws enacted by our duly-elected legislators.' " 226 Kan. at 19 (McFarland, J., dissenting).

*Flax* is distinguishable from the case at hand in one important respect. Throughout the case, the Kansas Turnpike Authority failed to articulate a rational basis for making a distinction between the Kansas turnpike and other state highways. The statute at issue in *Flax* provided immunity for all State agencies, yet this court found that the legislature clearly intended for the State to be liable for defective conditions on its highways. 226 Kan. at 8. There appeared to be no rational basis to exempt the Kansas Turnpike Authority, as an arm of the State, from the liability. Indeed, the Kansas Turnpike Authority advanced none, asserting only three possible bases: (1) the necessity to protect the state treasury; (2) allowing government to function without the threat of time and energy consuming legal actions; and (3) protection from high-risk activities. This court disregarded these bases as equally applicable to other highways in Kansas for which liability existed. 226 Kan. at 10-11.

In the case at hand, a rational basis exists for distinguishing between injuries which occur on public recreational property and those which do not, even if the same persons are involved. The classification reasonably advances the legitimate goal of encouraging the development of public recreational property. It is true that the classification is not a perfect one. However, " '[W]here rationality is the test, a State "does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." ' " *Kimel v. Florida Board of Regents*, 528 U.S. 62, 84, 145 L. Ed. 2d 522, 120 S. Ct. 631 (2000). See *Brown v. Wichita State University*, 219 Kan. at 13. K.S.A. 75-6104(o), as applied in this case, is rationally related to a legitimate government objective, and the trial court erred in finding that it violated the Equal Protection Clause of the United States Constitution and §§ 1 and 2 of the Kansas Constitution Bill of Rights.

## K.S.A. 75-6104(e)

The trial court also concluded that the discretionary function exception found in K.S.A. 75-6104(e) did not apply to provide immunity for the defendants based upon its determination that a legal duty existed on the part of school officials to supervise student-athletes and to take reasonable steps to protect their safety.

The discretionary function exception provides that a governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 75-6104(e). However, the discretionary function exception is not applicable in those situations where a legal duty exists, either by case law or by statute, which the governmental agency must follow. *Nero v. Kansas State University*, 253 Kan. 567, 587, 861 P.2d 768 (1993). A governmental agency cannot properly claim that its challenged action falls within the discretionary function exception where the action taken violates a legal duty. 253 Kan. at 587.

The trial court found the defendants owed a general duty of care to students under their care and were, therefore, not qualified for protection under K.S.A. 75-6104(e). See *Nero v. Kansas State University*, 253 Kan. 567, 587, 861 P.2d 768 (1993). The trial court based this decision on the defendant school district's policies regarding: (1) standards and legal duties for its employees; (2) safety of student athletes; and (3) guidelines to all coaches practicing in heat and humidity. The defendants now argue that the trial court erred in finding that a school owes a general duty of care to its students and contend that no such duty of care exists.

We need not determine whether the trial court was correct in finding the defendants owed a general duty of care. The plaintiff in this case has alleged both ordinary negligence and gross and wanton negligence. As noted above, we have already determined that the recreational use exception found in K.S.A. 75-6104(o) applies in this case, which eliminates any liability of the defendants for ordinary negligence. We have previously held that the discretionary function exception under the KTCA contained in K.S.A. 75-6104(e) provides a defense against only ordinary negligence and does not apply to allegations of willful, gross, or wanton negligence. See *Moran v. State*, 267 Kan. 583, 596, 985 P.2d 127 (1999); *Taylor v. Reno County*, 242 Kan. 307, 309, 747 P.2d 100 (1987); *Beck v. Kansas Adult Authority*, 241 Kan. 13, 33, 735 P.2d 222 (1987); *Hopkins v. State*, 237 Kan. 601, 612, 702 P.2d 311 (1985). Therefore, whether or not the discretionary function exception applies, the result in this case is the same: The plaintiff cannot recover for her claim of ordinary negligence but may still advance her claim of gross and wanton negligence. As a result, it is unnecessary for us to address the applicability of K.S.A. 75-6104(e) in this case.

Based upon our decision that K.S.A. 75-6104(o) is constitutional and applies in this case, the only remaining questions involve a determination of whether the defendants' actions amounted to gross or wanton negligence and caused the death of Alex. The decision of the trial court is reversed and the case is remanded for further proceedings.

Reversed and remanded.