(143 P.3d 685)
No. 95,077

MICHAEL SHANE CHRISTOPHER, *Appellant,* v. STATE OF KANSAS,
*ex rel.,* and KANSAS JUVENILE JUSTICE AUTHORITY, *Appellees.*

Opinion filed October 6, 2006.

*Mark Beam-Ward,* of Hill Beam-Ward, Kruse, & Wilson, LLC, of Overland Park, for appellant.

*Eliehue Brunson,* assistant attorney general, *Phill Kline,* attorney general, *Teresa L. Watson* and *Vincent Cox,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellees.

Before MALONE P.J., CAPLINGER, J., and LARSON, S.J.

CAPLINGER, J.: Michael Christopher was injured while participating in an educational activity as a resident at the Juvenile Justice Facility in Topeka. Christopher brought this negligence action against the State of Kansas and the Juvenile Justice Authority, which was operated by the Southeast Kansas Education Service Center (SKESC), Unified School District 609.

The district court dismissed Christopher's claims against SKESC based upon Christopher's failure to file a notice of claim pursuant to K.S.A. 12-105b(d). The court further dismissed Christopher's claims against the State, finding the State entitled to immunity under K.S.A. 2005 Supp. 75-6104(u).

We affirm the district court's dismissal of Christopher's claims against SKESC. K.S.A. 12-105b(d) is a prerequisite to commencement of suit, and the failure to give notice deprived the district court of subject matter jurisdiction over Christopher's claim. Further, we agree with the district court that the savings statute, K.S.A. 60-518, did not permit Christopher to refile after the limitation period had run.

We also affirm the district court's grant of summary judgment to the State based upon the State's specific grant of immunity under the juvenile justice program exception to the Kansas Tort Claims Act (KTCA), K.S.A. 2005 Supp. 75-6104(u). Applying the rational basis test, we find the State had a rational basis, *i.e.,* the promotion of the education of juvenile offenders, in enacting K.S.A. 2005 Supp. 75-6104(u), and the statute survives Christopher's equal protection challenge.

*Factual and procedural background*

The district court found the following facts, all of which are accepted by the parties on appeal:

"1. At all times relevant to this case, the plaintiff . . . Christopher, was a juvenile who had been placed under the control and supervision of the Juvenile Justice Authority.

"2. At the time of his injury, [Christopher] was a resident at the Juvenile Justice Facility in Topeka, Shawnee County, Kansas.

"3. The defendant, State of Kansas, *ex rel.* Kansas Juvenile Justice Authority, operated the Topeka Juvenile Justice Facility.

"4. The defendant contracted with Southeast Kansas Education Service Center ('SKESC'), Unified School District 609, in Girard, Kansas, to provide educational services at the Topeka Juvenile Justice Facility.

"5. Pursuant to the terms of the contract, SKESC was responsible for hiring instructors to provide the educational services at the Topeka Juvenile Justice Facility.

"6. The [State] had no direct involvement in the educational activities but was responsible for safely transporting the juveniles to and from the classrooms at the Topeka Juvenile Justice Facility.

"7. It was the responsibility of SKESC to provide for the safety of the students in the classrooms.

"8. On or about May 20, 2002, [Christopher] was operating a table saw in the shop class at the Topeka Juvenile Justice Facility and he sustained an injury to his left hand.

"9. Kirk Easton, a teacher employed by SKESC, was aware that the saw in question lacked a necessary safety guard.

"10. Despite knowing that the table saw lacked the necessary safety guard, Mr. Easton allowed students to use the equipment.

"11. Mr. Easton witnessed [Christopher] using the table saw in question prior to the accident but he did not stop him from using the equipment.

"12. It was the responsibility of SKESC to provide advice on the safe operation of the equipment used in the classrooms. ·

"13. Although the State . . . agreed to pay for the upkeep of the equipment used in the classrooms, it was the responsibility of SKESC to notify the [State] if any equipment required maintenance or was in disrepair."

Christopher brought suit against the State on December 5, 2003, and on March 17, 2004, he amended the petition to add SKESC as a defendant. Christopher claimed the defendants' negligence caused him severe, permanent, and disabling injury and resulted in medical expenses and lost earning capacity. Both defendants answered by denying negligence, and both raised the Kansas Tort Claims Act, K.S.A. 75-6101, *et seq.* (KTCA), as an affirmative defense.

*Dismissal of SKESC*

On June 2, 2004, SKESC moved to dismiss, arguing Christopher failed to plead compliance with the notice of claim statute, K.S.A. 12-105b(d). SKESC maintained such notice is a prerequisite to commencement of suit, and that by failing to give notice, the district court was without subject matter jurisdiction over Christopher's claim. SKESC contended the statute of limitations under K.S.A. 60-513 had expired and that Christopher's amended petition must be dismissed with prejudice.

In response, Christopher argued the notice of claim statute is an affirmative defense which must be raised in the first responsive pleading. Christopher contended SKESC intentionally failed to plead a known defense in order to raise the issue of the statute of limitations and that SKESC should not be allowed to benefit from this intentional failure.

The district court dismissed Christopher's claims against SKESC, reserving determination on whether Christopher could refile after having complied with K.S.A. 12-105b(d). Christopher subsequently moved to file a second amended petition, stating he had now provided proper notice of claim. SKESC opposed the motion, arguing the savings statute, K.S.A. 60-518, did not permit Christopher to refile after the limitation period had run.

The district court denied Christopher's motion to refile against SKESC. With regard to SKESC's failure to raise the notice of claim statute as an affirmative defense, the district court held failure to comply with the statute was a question of subject matter jurisdiction which could be raised at any time. The district court also held the savings statute did not apply, and Christopher could not refile outside the limitation period.

*Summary judgment in favor of State*

The State moved for summary judgment based on the KTCA, which provides a "governmental entity . . . shall not be liable for damages resulting from . . . any claim arising from providing a juvenile justice program to juvenile offenders, if such juvenile justice program has contracted with the commissioner of juvenile justice." K.S.A. 2005 Supp. 75-6104(u). The State also argued sepa-

rately that SKESC had assumed liability under the contract with the State and that the State did not bear liability as a landowner.

Christopher contended that arguments over contractual and landowner liability were premature given discovery had not been conducted. Christopher further suggested the State had a nondelegable duty to provide for the safety of juveniles within its custody. He argued K.S.A. 2005 Supp. 75-6104(u) is unconstitutional because it selectively grants immunity for injuries caused to children in the custody of the State, but not for adults in custody of the State.

Christopher also contended "that the protection of children by the State is a fundamental interest." Without directly claiming children are a suspect class or that recovery against governmental entities is a fundamental right, Christopher suggested the State's interest in the welfare of children forbade it from claiming sovereign immunity from liability for injuries caused to them by governmental agencies.

Christopher finally argued the KTCA is unconstitutional "[e]ven if you only applied a rational basis test." He noted "[e]qual protection still requires that all persons similarly situated should be treated alike," and he asserted "[a]ny person, whether a child or an adult, who has lost their freedom of choice while in the custody of the State should be treated alike."

The district court, after finding the facts quoted above, held the State had immunity under the "plain language of the juvenile justice program exception to the KTCA." On the equal protection challenge, the district court refused to apply strict scrutiny based on United States Supreme Court authority holding that age is not a suspect classification. Applying the rational basis test, the district court reasoned "one of the primary objectives" of K.S.A. 2005 Supp. 75-6104(u) "is to enable the State . . . to contract with other agencies so that juvenile offenders will be able to continue to receive an education while they are in state custody." The district court also held the KTCA does not eliminate the State's liability for its own negligence, but rather "simply provides that the State . . . is not liable for the negligent acts of independent contractors who provide juvenile justice programs."

The district court further held the State does not have a general and/or a nondelegable duty to provide for the safety of minors. Finding it undisputed that the State had no direct role in providing the educational services to the juvenile offenders, the district court held "any risk of loss associated with [Christopher's] injury would fall upon SKESC rather than the State." Christopher appeals both the dismissal of SKESC and the grant of summary judgment to the State.

Christopher states he "is going to argue this appeal in reverse order, and address the constitutional claim first." Christopher reasons that "both defendants are governmental entities" under the KTCA and that "[t]herefore, both defendant governmental entities can claim immunity from liability in connection with providing a juvenile justice program to juvenile offenders." However, although the SKESC pled the KTCA as an affirmative defense, it did not argue for dismissal on this basis, and the district court did not rule on the question. Whether the SKESC has immunity under the KTCA was not decided below, in other words, and it should not be considered on appeal. See *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003) (issues not raised before the district court may not be raised on appeal). Instead, we will first consider the dismissal of SKESC under the notice of claim statute and then the summary judgment in favor of the State based on the KTCA.

*K.S.A. 12-105b*

On appeal, Christopher admits that he did not file a notice of claim pursuant to K.S.A. 12-105b prior to filing his amended petition against SKESC. He again contends, however, that SKESC was obliged to raise this failure as an affirmative defense in its answer. The parties agree Christopher presents questions of law subject to unlimited review. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004) (interpretation of a statute).

The issue is controlled by *Gessner v. Phillips County Comm'rs*, 270 Kan. 78, 11 P.3d 1131 (2000). The plaintiffs in *Gessner*, like the plaintiff here, filed suit within the statute of limitations but failed to give notice to the municipality as required by K.S.A. 12-

105b. After being dismissed, the plaintiffs gave notice and attempted to recommence their actions outside the limitation period. They argued their actions were timely because the savings statute provisions of K.S.A. 60-518 operated to extend the time in which notice pursuant to K.S.A. 12-105b was required to be given. 270 Kan. at 79. The Supreme Court disagreed, holding the plaintiffs' actions were not commenced until well beyond the applicable period of limitations, and the trial court correctly entered orders of dismissal. 270 Kan. at 82.

With regard to SKESC's failure to plead the notice of claim statute in its answer, *Gessner* also makes clear K.S.A. 12-105b(d) is a "jurisdictional prerequisite" to commencing suit. 270 Kan. 78, Syl. ¶ 1. Whatever SKESC's obligation might have been to plead the notice of claim statute as a matter of procedure, the bottom line is parties may not confer subject matter jurisdiction on a court by waiver or failure to object. See *Kansas Bd. of Regents v. Skinner,* 267 Kan. 808, 814, 987 P.2d 1096 (1999). Christopher's filing within the limitation period, but without prior notice to SKESC, was void *ab initio* given the district court's lack of jurisdiction. See *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n,* 242 Kan. 470, 490, 749 P.2d 21 (1988). The savings statute did not change this fact, and the lack of subject matter jurisdiction could then be raised at any time. *Gessner,* 270 Kan. 78, Syl. ¶ 2; *Zinke,* 242 Kan. at 490.

We note that *Gessner* remains good law. In *Myers v. Board of Jackson County Comm'rs,* 280 Kan. 869, 876-77, 127 P.3d 319 (2006), the Kansas Supreme Court cited *Gessner* in holding "[f]ailure to provide the statutory notice of a claim in accordance with . . . 12-105b precludes relief." The Supreme Court further stated "[i]f the statutory requirements are not met, the court cannot acquire jurisdiction over the municipality." 280 Kan. at 877.

Accordingly, we find the district court properly dismissed SKESC's claims for failure to comply with the jurisdictional prerequisites of 12-105b(d).

*Equal protection challenge*

Christopher does not dispute that K.S.A. 2005 Supp. 75-6104(u) applies in this case. Instead, he asserts the provision violates his right to equal protection of the laws. Whether a statute violates equal protection rights is a question of law subject to unlimited review. *State v. Limon*, 280 Kan. 275, 283, 122 P.3d 22 (2005).

Christopher fails to identify the source of his equal protection argument. Nevertheless, Kansas courts have given equal effect to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and §§ 1 and 2 of the Bill of Rights of the Kansas Constitution. See *State ex rel. Tomasic v. Kansas City, Kansas Port Authority*, 230 Kan. 404, 426, 636 P.2d 760 (1981). The Equal Protection Clause provides "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., 14th Amend. "The guiding principle of the Equal Protection Clause is that similarly situated individuals should be treated alike." *Limon*, 280 Kan. at 283.

Procedural and substantive standards

"When a statute is attacked on equal protection grounds, the general rule is that the statute is presumed constitutional, and the burden is on the party attacking the statute to prove otherwise." *Barrett v. U.S.D. No. 259*, 272 Kan. 250, Syl. ¶ 2, 32 P.3d 1156 (2001). "Only in cases involving 'suspect classifications' or 'fundamental interests' is the presumption of constitutionality displaced and the burden placed on the party asserting constitutionality to demonstrate a compelling state interest which justifies the classification." 272 Kan. 250, Syl. ¶ 2; see also *Johnson v. California*, 543 U.S. 499, 505, 160 L. Ed. 2d 949, 125 S. Ct. 1141 (2005) (on racial classifications the government has the burden of proof); *Heller v. Doe*, 509 U.S. 312, 319, 125 L. Ed. 2d 257, 113 S. Ct. 2637 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."); *Jana-Rock Const. v. NY State Dept. of Econ. Dev.*, 438 F.3d 195, 204-05 (2d Cir. 2006) (where the government "expressly classifies persons on the basis of race or national origin," the "burden of proof shifts").

The substantive analysis applied to the different classifications varies as well. In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment, a court must apply different levels of scrutiny to different types of classifications. *Clark v. Jeter*, 486 U.S. 456, 461, 100 L. Ed. 2d 465, 108 S. Ct. 1910 (1988).

"At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. [Citations omitted.] Classifications based on race or national origin, [citation omitted] and classifications affecting fundamental rights, [citation omitted] are given the most exacting scrutiny. Between these extremes of rational review basis and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy. [Citations omitted.]" 486 U.S. at 461.

Sovereign immunity and equal protection

This case involves the selective exercise of sovereign immunity by the Kansas Legislature. Under the KTCA, governmental entities are liable unless immunity is provided under specifically enumerated exceptions or a catchall phrase stating the enumerated exceptions are not exclusive. See K.S.A. 2005 Supp. 75-6103 and 75-6104; *Lopez v. Unified Gov't of Wyandotte County*, 277 Kan. 682, 684, 89 P.3d 588 (2004). "Absent violation of constitutional rights, the legislature may control governmental immunity." *Brown v. Wichita State University*, 219 Kan. 2, 7, 547 P.2d 1015 (1976).

In *Brown*, the Kansas Supreme Court considered whether a prior immunity statute violated equal protection because immunity turned on the unit of government involved, not the function "of the governmental tort-feasor." 219 Kan. at 18. The Supreme Court rejected the equal protection argument, observing "the most ardent advocates of abolition of governmental immunity recognize the need to retain some degree of tort immunity." 219 Kan. at 18. This means "certain persons injured by the government will recover, while others injured . . . will not recover." 219 Kan. at 18. Therefore, "some classification scheme is necessary" and "[i]n the absence of a suspect classification or a violation of a fundamental right, a statutory discrimination should not be set aside if *any state of facts reasonably may be conceived to justify it*. [Citations omitted.]" 219 Kan. at 16, 19.

At the time of *Brown*, our Supreme Court could locate "no cases which hold governmental immunity invalid based on the equal protection clause of the Fourteenth Amendment." 219 Kan. at 19. The court then made such a holding a few terms later in *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, 596 P.2d 446 (1979). In that instance immunity for the Kansas Turnpike Authority violated equal protection because it created "a small class of motorists who are subjected to discrimination for no other reason than they happened to take the turnpike." 226 Kan. at 11.

In a more recent decision, our Supreme Court distinguished *Flax*, noting that it "was a 4-3 decision, with Justice McFarland, joined by Chief Justice Schroeder and Justice Fromme dissenting on the equal protection question." *Barrett*, 272 Kan. at 262. The Supreme Court in *Barrett* also identified *Brown* as the basis for the dissent in *Flax*. 272 Kan. at 262. Although *Barrett* did not overrule *Flax*, it shows *Brown* remains good law and an important guide when analyzing an immunity statute under the Equal Protection Clause.

### Classification in this case

On appeal, Christopher attempts to distance himself from his allegation that he was classified by age under K.S.A. 2005 Supp. 75-6104(u). Instead, he now claims the statute "applies a classification that is not based on age," or at least "does not solely create a classification based upon age." He describes the classification as follows:

"But the statute also creates a classification among children. Those in juvenile custody cannot recover. Those attending public school can recover. This is not based on age, but where the child is receiving his education."

As the procedural history shows, Christopher argued to the district court that his classification was based upon age alone. Christopher contended:

"In this case, we have individuals who are in the custody of the State because of wrongs they have committed. The only difference is their age. The question is whether there is any basis for the State's determination to treat children in custody differently than adults in custody, when they have injury claims against a governmental entity."

Other than age, Christopher asserted no classifications below and he cannot raise new classifications on appeal. See *Nielander*, 275 Kan. at 268. Even if this court were to consider the classification of children in juvenile custody versus those in public school, Christopher provides no basis to conclude juvenile offenders constitute a suspect class such as race, national origin, sex, or illegitimacy. See *Able v. United States*, 155 F.3d 628, 631 (2d Cir. 1998) (strict or intermediate scrutiny applies where "the subject of the different treatment is a member of a class that historically has been the object of discrimination."). Christopher also does not show how juvenile offenders and public school students are similarly situated, and neither common experience nor the published opinions suggest they are. See *Rudolph v. Cuomo*, 916 F. Supp. 1308, 1323 (S.D. N.Y. 1996) (prisoners and nonprisoners are not similarly situated); *Brandon v. Corrections Corp. of America*, 28 P.3d 269, 276 (Alaska 2001) (same); *People v. Maxson*, 181 Mich. App. 133, 135, 449 N.W.2d 422 (1989) (same).

Regarding the classification of age, the district court correctly held it was subject to a rational basis analysis, not the heightened scrutiny as Christopher urges.

"[A]ge is not a suspect classification under the Equal Protection Clause. [Citation omitted.]

"States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest. The rationality commanded by the Equal Protection Clause does not require States to match age distinctions and the legitimate interests they serve with razorlike precision. As we have explained, when conducting rational basis review 'we will not overturn such [governmental action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational.' [Citation omitted.]" *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83-84, 145 L. Ed. 2d 522, 120 S. Ct. 631 (2000).

Christopher contests this authority and the others cited by the district court because they did not "involve a classification which treated children different[ly] from adults." However, Christopher does not explain the significance of this distinction, given age has not historically defined a class of persons subject to discrimination. In contrast to race or gender, States may properly "rely on age as

a proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interests." *Kimel*, 528 U.S. at 84. For these reasons, "an age classification is presumptively rational." 528 U.S. at 84.

Christopher's arguments on rational basis scrutiny track his argument for strict scrutiny. He contends "there is no rational basis for depriving children of compensation for injuries caused by the negligence of the State." In response to the district court's finding that the State had a rational basis for promoting education of juvenile offenders, Christopher complains "[t]here was no evidence that education could not be provided to juveniles without the grant of immunity."

However, the rational basis test is not so demanding. As the United States Supreme Court has emphasized, "[a] classification does not fail rational-basis review because it '. . . results in some inequality.' [Citation omitted.]" *Heller*, 509 U.S. at 321. Courts may not "sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 49 L. Ed. 2d 511, 96 S. Ct. 2513 (1976). Instead, legislative enactments must only "implicate legitimate goals," and the means chosen "must bear a rational relationship to those goals." *Barrett*, 272 Kan. 250, Syl. ¶ 3.

With regard to the evidence, "[a] State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller*, 509 U.S. at 320. " '[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.' [Citations omitted.]" 509 U.S. at 320. Therefore, a rational basis will be found for a classification "if any state of facts reasonably may be conceived to justify it." *Brown*, 219 Kan. 2, Syl. ¶ 6.

K.S.A. 2005 Supp. 75-6104(u) is rationally related to the State's interest in providing an education to juvenile offenders. It allows the State to contract with third parties without becoming liable for the negligent acts of those parties. Considering the "necessity to protect the state treasury," *Brown*, 219 Kan. at 16, invoking sovereign immunity for acts and omissions out of the State's direct control has a rational basis. The subsection similarly allows the

State to engage the expertise of the third-party contractors without risking "the threat of time and energy consuming legal actions, which would inhibit the administration of traditional state activities." 219 Kan. at 16. Further, the legislature could have considered working with juvenile offenders as one of the "high-risk activities undertaken" by government, and that immunity from claims for torts committed during such a high-risk activity was reasonable where, once again, the State was not in direct control of the juvenile offenders at the time. 219 Kan. at 17.

" 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' [Citations omitted.]" *Heller*, 509 U.S. at 321. Given this, Christopher bore the burden " 'to negative every conceivable basis which might support' " the statute in question. 509 U.S. at 320 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 35 L. Ed. 2d 351, 93 S. Ct. 1001 [1973]). Having failed this, Christopher fails to show he was deprived of equal protection by the district court's application of the KTCA.

### Delegation of duty

Christopher expands on appeal his arguments for a nondelegable duty by the State to children in its custody. Christopher recognizes, however, that his arguments are not viable if K.S.A. 2005 Supp. 75-6104(u) survives the equal protection challenge.

The basis for this concession is obvious: K.S.A. 2005 Supp. 75-6104(u) permits the State to delegate its duty towards juvenile offenders. Duties under tort are imposed by law, *Bender v. Kansas Secured Title & Abstract Co.*, 34 Kan. App. 2d 399, Syl. ¶ 7, 119 P.3d 670 (2005), and the law not only contemplates such a delegation, it grants the State immunity from any damages arising from the delegation. Given K.S.A. 2005 Supp. 75-6104(u) did not violate Christopher's equal protection rights, the State did not violate its duty to Christopher by delegating responsibilities to SKESC.

Affirmed.